546 S.E.2d 454

The COORDINATING COUNCIL FOR IN-DEPENDENT LIVING, INC., A West Virginia Corporation; Pro Careers, Inc., a West Virginia Corporation; Alternate Care, Inc., a West Virginia Corporation; American Homecare Services, Inc., a West Virginia Corporation; Braley and Thompson, Inc., a West Virginia Corporation; Catholic Community Services, Inc., a West Virginia Corporation; Health Consultants Plus, Inc., a West Virginia Corporation; Mountain State

Home Health Care, Inc., a West Virginia Corporation; Wyoming County Opportunity Workshop, Inc., a West Virginia Corporation; and Companion Care Corporation, a West Virginia Corporation, Plaintiffs Below, Appellees,

v.

The Honorable Joseph M. PALMER, State Tax Commissioner, Defendant Below, Appellant.

No. 28666.

Supreme Court of Appeals of West Virginia.

Submitted March 7, 2001.

Decided April 30, 2001.

Darrell V. McGraw, Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Charleston, for Appellant.

Herschel H. Rose, III, Rose & Atkinson, Lee B. Forb, Charleston, for Appellees.

Karen H. Miller, Richard W. Walters, Miller, Snyder, Weiler & Walters, Charleston, for Amici Curiae, Barbour County Senior Center; Berkley Senior Services; Boone County Community Organization; Braxton County Senior Citizen Center; Brooke County Committee on Aging; Cabell Huntington Multipurpose Senior Center; Calhoun County Committee on Aging; Clay County Development Corporation; Doddridge County Senior Citizen Center; Fayette County Committee on Aging; Council of Senior Citizens of Gilmer County; Grant County Commission on Aging; Greenbrier County Committee on Aging; Hampshire County Committee on Aging; Committee for Hancock County Senior Citizens; Hardy County Committee on Aging; Harrison County Senior Citizens; Jackson County Commission on Aging; Jefferson County Council on Aging; Kanawha Valley Senior Services; Lewis County Senior Citizens Center; Lincoln County Opportunity Company; Pride in Logan County; Marion County Senior Citizens; Marshall County Committee on Aging; Mason County Action Group; McDowell County Commission on Aging; Mercer County Commission on Aging; Aging and Family Services of Mineral County; Mingo County Senior Citizens Program; The Senior Monogalians; Monroe County Council on Aging; Senior Life Services of Morgan County; Nicholas County Community Action; Upper Ohio Valley; Pendleton County Committee on Aging; Pleasants County Committee on Aging; Pocahontas County Senior Program; Preston County Senior Citizens; Putnam Aging Program; Raleigh County Commission on Aging; The Committee on Aging for Randolph County; Ritchie County Integrated Family Services; Roane County Commission on Ag-

ing; Summers County Council on Aging; Taylor County Senior Citizens; Tucker County Senior Citizens; County of Senior Tyler Countians; Upshur County Senior Citizens Opportunity Center; Wayne County Community Services Organization; Webster County Commission of Senior Citizens; Wetzel County Committee on Aging; Wirt County Committee on Aging; Wood County Senior Citizens Association; and Wyoming County Council on Aging.

DAVIS, Justice:

The appellant herein, and defendant below, the Honorable Joseph M. Palmer, Tax Commissioner for the State of West Virginia [hereinafter referred to as "the Commissioner" or "Commissioner Palmer"], appeals from an order entered February 18, 2000, by the Circuit Court of Kanawha County. In that order, the circuit court enjoined the Commissioner from enforcing the privilege tax applicable to providers of health care services, W. Va.Code § 11–13A–3 (1997) (Repl.Vol.1999), against the appellees herein, and plaintiffs below, The Coordinating Council for Independent Living, Inc., et al.[1] [hereinafter collectively referred to as "the appellees" or "Coordinating Council"], finding that the statutory language was too ambiguous to determine whether the homemaker and case management services provided by the appellees were within the scope of the health care services contemplated by the statute. On appeal to this Court, the Commissioner assigns error to the circuit court's ruling and requests that it be reversed.

Upon a review of the parties' arguments, the record submitted for appellate consideration, and the pertinent authorities, we are inclined to agree with the circuit court's ruling. We conclude that, absent further clarification from the Legislature, neither the statutory language employed in W. Va.Code § 11–13A–3 (1997) (Repl.Vol.1999) nor that set forth in W. Va.Code § 11–13A–2(d)(2) (1995) (Repl.Vol.1999) renders the health care services provider tax applicable to those homemaker and/or case management services supplied by the appellees pursuant to the Aged/Disabled Home and Community-Based Services Waiver Program. Furthermore, we concur with the circuit court's determination that the Commissioner's attempt to enforce this tax, after failing to do so for nearly five years from the date of its inception, by issuing a letter informing affected taxpayers of their resultant tax liability amounted to an impermissible rule in contravention of the mandates of the Administrative Procedures Act, W. Va.Code § 29A–1–1, et seq., and W. Va.Code § 29A–3–1, et seq. Accordingly, we affirm the February 18, 2000, decision of the Circuit Court of Kanawha County.

I.

## FACTUAL AND PROCEDURAL HISTORY

In the State of West Virginia, persons who are elderly or disabled are often provided home health services as an alternative to residential care provided by a nursing home or other health care facility. To facilitate the provision of these services, West Virginia Medicaid administers the Aged/Disabled Home and Community–Based Services Waiver Program [hereinafter the "A/D Waiver Program"],[2] which pays for the provision of such home-based services for those individu-

---

1. The organizations named as appellees herein, and plaintiffs below, are all providers of health care services pursuant to the Aged/Disabled Home and Community-Based Services Waiver Program, which is administered by West Virginia Medicaid. For further discussion of the details of this Waiver Program, see Section I, infra. Those organizations participating as appellees to the instant appeal include The Coordinating Council for Independent Living, Inc.; Pro Careers, Inc.; Alternate Care, Inc.; American Homecare Services, Inc.; Braley and Thompson,

Inc.; Catholic Community Services, Inc.; Health Consultants Plus, Inc.; Mountain State Home Health Care, Inc.; Wyoming County Opportunity Workshop, Inc.; and Companion Care Corporation.

2. This program is also referred to as the Title XIX Waiver Program due to its location in Title XIX of the Social Security Act, which title concerns "Grants to States for Medical Assistance Programs". See generally 42 U.S.C. § 1396, et seq.

als who satisfy the requisite eligibility criteria. The Program is funded by both West Virginia and federal funds: for every $1.00 provided by the State, the federal government contributes $3.00, *i.e.*, the federal government reimburses the State for 75% of the cost to provide A/D Waiver Program services. *See generally* 42 U.S.C. § 1396, *et seq.* In order to generate the State's contributory amount, the Legislature, in 1993, adopted a privilege tax applicable to health care services.[3] W. Va.Code § 11–13A–3(a) (1997) (Repl.Vol.1999). The pertinent language directs:

(a) *Imposition of tax.*——Upon every person exercising the privilege of engaging or continuing within this state . . . in the business of furnishing certain health care services, there is hereby levied and shall be collected from every person exercising such privilege an annual privilege tax.

(b) *Rate and measure of tax.*——The tax imposed in subsection (a) of this section shall be five percent of the gross value of . . . the health care service provided, as shown by the gross income derived from the . . . furnishing thereof by . . . the provider of the health care service, except as otherwise provided in this article. . . .

W. Va.Code § 11–13A–3.

The instant controversy concerns the definition of "health care services" referenced in § 11–13A–3(a) and whether the services provided by the appellees are subject to this privilege tax. Pursuant to W. Va.Code § 11–13A–3(c), "the term 'certain health care services' means, and is limited to, behavioral health services and community care services." "Community care services" is further defined as "home and community care services furnished by a provider pursuant to an individual plan of care, which also includes senior citizens groups that provide such services, but does not include services of home health agencies." W. Va.Code § 11–13A–2(d)(2) (1995) (Repl.Vol.1999). The record before us indicates that, from the imposition of this tax in 1993 until 1998, entities such as the appellees[4] were not required to pay this tax and, in fact, refunds were issued to those organizations that had nevertheless rendered payment.[5] In 1998, however, the State Tax Commissioner determined that the appellees

---

**3.** This tax also applies to coal, limestone, and sandstone extraction. *See* W. Va.Code § 11–13A–3(a) (1997) (Repl.Vol.1999).

**4.** Appearing as amici curiae in this proceeding are numerous senior citizens groups representing each of the State's fifty-five counties. The full roster of amici curiae includes: Barbour County Senior Center; Berkley Senior Services; Boone County Community Organization; Braxton County Senior Citizen Center; Brooke County Committee on Aging; Cabell Huntington Multipurpose Senior Center; Calhoun County Committee on Aging; Clay County Development Corporation; Doddridge County Senior Citizen Center; Fayette County Committee on Aging; Council of Senior Citizens of Gilmer County; Grant County Commission on Aging; Greenbrier County Committee on Aging; Hampshire County Committee on Aging; Committee for Hancock County Senior Citizens; Hardy County Committee on Aging; Harrison County Senior Citizens; Jackson County Commission on Aging; Jefferson County Council on Aging; Kanawha Valley Senior Services; Lewis County Senior Citizens Center; Lincoln County Opportunity Company; Pride in Logan County; Marion County Senior Citizens; Marshall County Committee on Aging; Mason County Action Group; McDowell County Commission on Aging; Mercer County Commission on Aging; Aging and Family Services of Mineral County; Mingo County Senior Citizens

Program; The Senior Monogalians; Monroe County Council on Aging; Senior Life Services of Morgan County; Nicholas County Community Action; Upper Ohio Valley; Pendleton County Committee on Aging; Pleasants County Committee on Aging; Pocahontas County Senior Program; Preston County Senior Citizens; Putnam Aging Program; Raleigh County Commission on Aging; The Committee on Aging for Randolph County; Ritchie County Integrated Family Services; Roane County Commission on Aging; Summers County Council on Aging; Taylor County Senior Citizens; Tucker County Senior Citizens; County of Senior Tyler Countians; Upshur County Senior Citizens Opportunity Center; Wayne County Community Services Organization; Webster County Commission of Senior Citizens; Wetzel County Committee on Aging; Wirt County Committee on Aging; Wood County Senior Citizens Association; and Wyoming County Council on Aging. These entities are public, non-profit organizations which provide personal care and community care services, as well as services pursuant to the Title XIX Waiver Program. *See supra* note 2.

**5.** In their memorandum before this Court, the various amici curiae claim that they, too, have been found to be exempt from the health care providers tax, refunded sums previously paid, and subsequently subjected thereto much like the appellees presently before this Court.

were within the rubric of those health care services providers contemplated by W. Va. Code § 11–13A–3, and issued a letter to affected taxpayers levying the tax thereon.[6] Shortly thereafter, on August 24, 1998, the plaintiffs below and appellees herein consolidated their objections and filed the instant proceeding in the Circuit Court of Kanawha County challenging the tax's applicability.

Following the taking of discovery, and a hearing on this matter, the circuit court rendered its decision by order entered February 18, 2000. In deciding this case, the court first found, in part, that

Plaintiffs [appellees] are Medicaid Title XIX Aged and Disabled Waiver providers of either homemaker services or case management services.

All Title XIX Waiver Services *must* be delivered pursuant to an individual [sic] plan of care in order to be reimbursable. Consequently, all services delivered by all Plaintiffs [appellees] are delivered pursuant to an individualized plan of care designed for the particular client being served.

Medicaid dollars are expended to reimburse, *inter alia*, providers of case man-

agement and homemaker services pursuant to the Aged/Disabled Home and Community-Based Services Waiver Program.

The services rendered by Plaintiffs [appellees], to the extent that they are rendered to Medicaid-eligible individuals, are reimbursed by the State Medicaid Program, and were so reimbursed when S.B. 2 [W. Va.Code § 11–13A–3] was passed.

Homemaker services include light housekeeping, hygiene related activities, and food preparation by aides and other forms of non-medical or non-health related personal care.... [7]

Case management services, as provided by the Plaintiffs [appellees], include the development of a plan of care for Medicaid eligible clients by registered nurses and case managers.

(Paragraph numbers omitted; footnote added). The circuit court then

DECLARE[D] that the West Virginia Medicaid Provider Tax, *W. Va.Code* § 11–13A–1, *et seq.*, does not apply to Plaintiffs [appellees].

Th[e] Court FURTHER DECLARE[D] that the definition contained in *W. Va.Code*

---

**6.** In the aforementioned letter, dated March 3, 1998, James E. Dixon, Director of the Department of Tax and Revenue's Compliance Division, informed plaintiff below and appellant herein Pro Careers, Inc., in pertinent part, that

[t]here has been some confusion about the taxability of many of the services provided by community care providers (including Medicaid Title XIX service providers) that are non-medical in nature, such as light housekeeping, hygiene related activities, and food preparation by aides. In the past, these type[s] of services have been treated as not taxable. Only the medical type services of these providers had been taxed. **NOTE: Beginning on a prospective basis on April 1, 1998 all services rendered pursuant to a plan of care, including non-medical services, provided by community care providers and Medicaid Title XIX service providers, will be treated as taxable. The services that fall within the broad-based health care provider tax, such as nursing services or therapy services may still be reported under the health care provider tax.** ...

. . . .

To summarize, all gross receipts from services rendered by Medicaid Waiver Title XIX Service providers and Community Care providers pursuant to a doctor's plan of care, including medical and non-medical services, are taxable....

. . . .

A few providers have been paying on their non-medical type services. Upon application, a refund or credit will be given for any severance or business privilege tax paid on non-medical type services rendered before April 1, 1998.

Please ... comply with the change in taxation with the filing of the tax return for the period beginning April 1, 1998....

**7.** In their briefs on appeal, the parties characterize the homemaker services provided by the appellees somewhat differently than the circuit court's interpretation thereof. The Commissioner suggests that homemaker services include the following tasks: assisting with dressing, bathing, personal hygiene, and meal preparation and feeding; performing essential errands, such as shopping for groceries and medications; changing colostomy bags; providing limited wound care and nontechnical assistance with medical equipment; and monitoring range of motion. In addition, the Commissioner contends that, if the individual service provider possesses specialized medical training, such services also include the performance of more detailed health care functions. By contrast, the appellees insist that the homemaker services which they provide are generally non-medical in nature.

§ 11–13A–2(d)(2) is so unclear and ambiguous on its face that it is impossible to determine whether or not the Plaintiffs [appellees] are subject to the provisions of the Medicaid Provider Tax.

Th[e] Court ORDER[ED] that the State Tax Commissioner is hereby ENJOINED from enforcing the Medicaid Provider Tax against the Plaintiffs [appellees], insofar as they provide homemaker services unless and until such time as the Legislature amends the statute or the State Tax Commissioner properly promulgates a legislative rule in such a manner that makes clear any legislative intent that homemaker services provided by the Plaintiffs [appellees] are subject to the Medicaid Provider Tax.

Th[e] Court FURTHER ORDER[ED] that the State Tax Commissioner is hereby ENJOINED from enforcing the Medicaid Provider Tax against the Plaintiffs [appellees], insofar as they provide case management services, unless and until such time as the Legislature amends the statute in such a manner that makes clear any legislative intent that the Plaintiffs [appellees] are subject to the Medicaid Provider Tax.

Th[e] Court further ORDER[ED] that [the] State Tax Commissioner's attempts to apply the tax to the Plaintiffs [appellees] by means of an improperly promulgated rule violate the Administrative Procedures Act, *W. Va.Code* § 29A–1–1, *et seq.*, and are void.

From these rulings, the Tax Commissioner appeals to this Court.

## II.

### STANDARD OF REVIEW

■ On appeal to this Court, the Commissioner challenges the correctness of the circuit court's interpretation of the governing statutory law and its resolution of associated legal questions. Generally,

[i]n reviewing challenges to the findings and conclusions of the circuit court, we

apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997). Of particular relevance to the instant proceeding, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Accord Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). With these standards in mind, we proceed to consider the Commissioner's assignments of error.

## III.

### DISCUSSION

The Commissioner assigns error to the circuit court's ruling which found the health care services provider tax contained in W. Va.Code § 11–13A–3 (1997) (Repl.Vol.1999) to be inapplicable to the homemaker and case management services supplied by the appellees. In short, the Commissioner contends that the circuit court erroneously interpreted the tax statutes at issue herein and improperly found that the Administrative Procedures Act precluded the Commissioner's attempts to enforce such tax.[8]

#### A. *Applicability of West Virginia Code § 11–13A–3*

■ The Commissioner's first contention is that the circuit court erroneously concluded that the provisions of W. Va.Code § 11–13A–3 were too ambiguous to permit the Commissioner to levy the health care services tax on the appellees' provision of home-

---

**8.** At this juncture, we wish to recognize the appearance of the various amici curiae in this appeal. We appreciate their contribution to the instant proceeding and will consider their arguments. For a complete listing of organizations appearing as amici curiae herein see *supra* note 4.

maker and case management services. Central to a resolution of this assignment of error is the statute at the heart of this assigned error. In relevant part, W. Va. Code § 11–13A–3(a) (1997) (Repl.Vol.1999) directs that "[u]pon every person exercising the privilege of engaging or continuing within this state ... in the business of furnishing *certain health care services*, there is hereby levied and shall be collected from every person exercising such privilege an annual privilege tax." (Emphasis added). The question pertinent to this appeal, then, is whether the homemaker and case management services supplied by the appellees are "health care services" within the contemplation of the statute.

■■■ When interpreting a legislatively created law, we typically afford the statute a construction that is consistent with the Legislature's intent. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). On the other hand, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). *See also* Syl. pt. 1, in part, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous....").

■■■ Where, however, the statute to be interpreted concerns taxation, we usually construe the tax law in a manner that is favorable to the subject taxpayer. "Laws imposing a license or tax are strictly construed and when there is doubt as to the meaning of such laws they are construed in favor of the taxpayer and against the State." Syl. pt. 1, *State ex rel. Lambert v. Carman*, 145 W.Va. 635, 116 S.E.2d 265 (1960). *Accord* Syl. pt. 2, *Baton Coal Co. v. Battle*, 151 W.Va. 519, 153 S.E.2d 522 (1967) ("As a general rule, statutes imposing taxes are construed strictly against the taxing authority and liberally in favor of the taxpayer."). *Cf.* Syl. pt. 1, *Calhoun County Assessor v. Consolidated Gas Supply Corp.*, 178 W.Va. 230, 358 S.E.2d 791 (1987) ("Statutes governing the imposition of taxes are generally construed against the government and in favor of the taxpayer. However, statutes establishing administrative procedures for collection and assessment of taxes will be construed in favor of the government.").

■■■ The tax statute at issue herein, W. Va.Code § 11–13A–3(a), directs that the health care services provider tax applies to "*certain* health care services." (Emphasis added). As the Legislature has provided no specific definition of the word "certain," we must resort to the commonly accepted usage of this term. "In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." Syl. pt. 3, in part, *Ohio Cellular RSA Ltd. P'ship v. Board of Pub. Works of West Virginia*, 198 W.Va. 416, 481 S.E.2d 722 (1996) (internal quotations and citations omitted).[9] Typically, "certain" refers to something that is "of a specific but unspecified character, quantity, or degree," *i.e.*, "particular". Webster's Ninth New Collegiate Dictionary 222 (1983).[10] Thus, it is

---

**9.** *Accord* Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use."); Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W.Va. 637, 17 S.E.2d 810 (1941) ("In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used."), *overruled*

*on other grounds by Lee–Norse Co. v. Rutledge*, 170 W.Va. 162, 291 S.E.2d 477 (1982).

**10.** *Accord* II Oxford English Dictionary 234 (1970) (construing "certain" as an adjective "[u]sed to define things which the mind definitely individualizes or particularizes from the general mass, but which may be left without further identification in description"); Random House Webster's Unabridged Dictionary 339 (2d ed.1998) (defining "certain" as "definite or particular, but not named or specified").

clear that W. Va.Code § 11–13A–3(a) does not intend to tax *all* health care services but only *particular* ones. As such, " '*[i]nclusio unius est exclusio alterius,*' the expression that 'one is the exclusion of the others,' has force in this case. This doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language." *State ex rel. Roy Allen S. v. Stone,* 196 W.Va. 624, 630 n. 11, 474 S.E.2d 554, 560 n. 11 (1996).

To assist with the determination of which health care services are, indeed, taxable, we refer to the statutory language which additionally provides that " 'certain health care services' means, and is limited to, behavioral health services and community care services." W. Va.Code § 11–13A–3(c). The accompanying definitional section provides further guidance to our inquiry. W. Va.Code § 11–13A–2 (1995) (Repl.Vol.1999), which contains definitions for the "Severance and Business Privilege Tax Act of 1993," *see* W. Va.Code § 11–13A–1 (1993) (Repl.Vol.1999), mandates, in subsection (a), that

> [w]hen used in this article, or in the administration of this article, the terms defined in subsection . . . (d) of this section shall have the meanings ascribed to them by this section, unless a different meaning is clearly required by the context in which the term is used, or by specific definition.

Subsection (d) of § 11–13A–2 defines both "behavioral health services," which are not at issue in this proceeding,[11] and "community care services"; no definition is provided specifically for "case management services" or "homemaker services". " 'Community care services' means home and community care services furnished by a provider pursuant to an individual plan of care, which also includes senior citizens groups that provide such services, but does not include services of home health agencies." W. Va.Code § 11–13A–2(d)(2).

Applying these definitions to the facts of the case *sub judice,* we are troubled by the lack of clarity as to the precise nature of "community care services." The only guidance the purported definition gives to our analysis is to instruct that (1) such services are home and community care services provided according to an individual plan of care, and (2) they include services provided by senior citizens groups but do not contemplate those services rendered by home health agencies. Aside from this limited explanation of "community care services," which, it should be noted, violates the nearly universal rule to refrain from employing the term being defined in the definition thereof, we are no better equipped to understand the meaning of this term than we were before we considered its definition.

Moreover, despite the Commissioner's attempts to fortify the above-quoted definition of "community care services" with reference to additional statutory definitional sections, we are constrained to rely upon the sole definition quoted above because W. Va.Code § 11–13A–2(a) specifically limits the definition of the terms defined therein to the meanings ascribed in that statute. While § 11–13A–2(a) does make allowance for reference to other, more specific definitions of those terms, we can locate no other definitions of "community care services" applicable to this proceeding. No additional definitions for this term are contained in the "Severance and Business Privilege Tax Act of 1993," and the applicability of the various definitional statutes cited by the Commissioner are limited to the specific body of law of which they are a part. *See* W. Va.Code § 15–2C–1(g) (1996) (Repl.Vol.2000) (defining "home care services," which are delivered in abuse cases, as "services provided to children or incapacitated adults in the home . . . through the medicaid waiver program, or through any person when that service is reimbursable under the state medicaid program" and, in introductory paragraph, noting that the defined terms, "when used in this article[,] have meanings ascribed to them in this section, except in those instances where the context clearly indicates a different meaning"); W. Va.Code § 16–5P–3(e) (1997) (Repl.Vol.1998)

---

11. See W. Va.Code § 11–13A–2(d)(1) (1995) (Repl.Vol.1999) for the definition of "behavioral health services".

(construing "community care" in senior services context as "a system of community-based, in-home services and alternative living arrangements which provide a full range of preventive, maintenance and restorative services for the frail elderly, disabled, or terminally ill").

Furthermore, particular reference is made in one of the Commissioner's cited statutes to services provided pursuant to the A/D Waiver Program, specifically incorporating such services into the definition of "home care services". *See* W. Va.Code § 15–2C–1(g). This specific designation of Medicaid waiver services further indicates that, as no such reference is made in the instant context, the Legislature did not intend to include within the definition of those "certain health care services" taxable under the health care provider tax services, such as those supplied by the appellees, that are provided in accordance with the A/D Waiver Program. In short, we reiterate our prior observation: "*'[i]nclusio unius est exclusio alterius.'*" *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. at 630 n. 11, 474 S.E.2d at 560 n. 11. Therefore, we hold that the privilege tax levied upon health care services providers through W. Va.Code § 11–13A–3 (1997) (Repl.Vol. 1999) does not apply to "case management services" supplied pursuant to the Aged/Disabled Home and Community–Based Services Waiver Program. Accordingly, we affirm the circuit court's conclusion that, without further clarification of the statutory language from the Legislature, the health care provider tax does not apply to the case management services rendered by the appellees. At this juncture, we wish to further clarify the scope of our holding. Although we find that the appellees' case management services are not subject to the § 11–13A–3 health care services providers tax, we make no finding as to the tax's applicability to the senior citizens groups appearing as amici curiae to this proceeding.

 Likewise, given the directory language of § 11–13A–2(a) limiting the language of terms defined to the meanings ascribed to them therein and the absence of "homemaker services" from the definition of taxable "com-munity care services," we also are inclined to agree with the circuit court's conclusion that, without further clarification by the Legislature, the appellees' homemaker services are not taxable by W. Va.Code § 11–13A–3. Accordingly, we hold that "homemaker services" provided pursuant to the Aged/Disabled Home and Community–Based Services Waiver Program are not subject to the health care providers privilege tax levied by W. Va.Code § 11–13A–3 (1997) (Repl.Vol. 1999). Thus, we affirm the circuit court's holding finding that the health care services providers tax does not apply to the home-maker services supplied by the appellees. Again, however, we render no decision as to whether the services provided by the amici senior citizens groups are subject to this tax.

### B. Administrative Procedures Act

 For his second assignment of error, the Commissioner objects to the circuit court's ruling precluding him from collecting the health care services providers tax from the appellees unless he follows the Administrative Procedures Act, W. Va.Code § 29A–1–1, *et seq.*, and properly promulgates an official rule to that effect. It appears that the circuit court based its decision on the fact that the Commissioner attempted to levy this tax on the appellees after a lengthy period of not enforcing this legislation by simply issuing a letter to affected taxpayers informing them of their tax liability.[12]

Despite the purported confusion in the State Tax Department about the precise nature of services provided by the appellees, evidenced by the appellate record in this case, we nevertheless remain troubled by the draconian manner in which the Commissioner suddenly began enforcing the tax law which had been dormant since its adoption five years earlier. The Legislature has acknowledged that various agencies of our State's government necessarily must adopt rules and procedures in order to fulfill their designated responsibilities. *See, e.g.*, W. Va. Code § 29A–1–1 (1982) (Repl.Vol.1998). However, the Legislature has also clearly stated that it desires to maintain a modicum

---

**12.** For the relevant portion of this letter decision, see *supra* note 6.

of control over these agency regulations to ensure their "systematic preparation, public consideration, orderly promulgation, [and] preservation and public availability of the body of law." *Id.*

■ Pursuant to the Administrative Procedures Act, a

"[r]ule" includes every regulation, standard or statement of policy or interpretation of general application and future effect, including the amendment or repeal thereof, affecting private rights, privileges or interests, or the procedures available to the public, adopted by an agency to implement, extend, apply, interpret or make specific the law enforced or administered by it or to govern its organization or procedure, but does not include regulations relating solely to the internal management of the agency, nor regulations of which notice is customarily given to the public by markers or signs, nor mere instructions. Every rule shall be classified as "legislative rule," "interpretive rule" or "procedural rule," all as defined in this section, and shall be effective only as provided in this chapter[.]

W. Va.Code § 29A-1-2(i) (1982) (Repl.Vol. 1998). *See also* W. Va.Code § 29A-1-2(c) (defining "interpretive rule"); 29A-1-2(d) (construing "legislative rule"); 29A-1-2(g) (explaining "procedural rule"); and 29A-1-2(h) (providing definition of "proposed rule"). To ensure the orderly promulgation of such rules, the Legislature has established specific guidelines and has announced that

[i]n addition to other rule-making requirements imposed by law and except to the extent specifically exempted by the provisions of this chapter or other applicable law, and except as provided for in article three-a [§ 29A-3A-1 et seq.] of this chapter, every rule and regulation (including any amendment of or rule to repeal any other rule) shall be promulgated by an agency only in accordance with this article and shall be and remain effective only to the extent that it has been or is promulgated in accordance with this article.

W. Va.Code § 29A-3-1 (1988) (Repl.Vol. 1998). This Court also has previously recognized the importance of compliance with the Administrative Procedures Act's rule-making procedures: "Until the statutory mechanisms set forth in the Administrative Procedures Act for the promulgation of an agency rule are complied with, any resolution of a regulatory agency governed by the Act remains a nullity providing no one with a clear legal right to judicial relief." Syl. pt. 1, *Wheeling Barber Coll. v. Roush,* 174 W.Va. 43, 321 S.E.2d 694 (1984).

In the case *sub judice,* the Commissioner implemented a procedure to collect a tax that he previously had not enforced. As this policy statement, albeit in the form of a letter to the affected taxpayers, nevertheless "affect[ed] private rights, privileges or interests" and involved the Tax Department's "implement[ation], exten[sion], appl[ication], [or] interpret[ation]" of the laws which it was charged to execute, we find that the Commissioner's letter of March 3, 1998, did, in fact, constitute an agency rule that was required to comply with the detailed rule-making procedure set forth in W. Va.Code § 29A-3-1, *et seq.* Because the Commissioner's stated policy did not follow the requisite mandates for formal proposal, approval, adoption, etc., *see id.,* his attempted enforcement of the health care services providers tax was void and ineffective. We therefore affirm the circuit court's ruling in this regard.

## IV.

### CONCLUSION

For the foregoing reasons, the February 18, 2000, decision of the Circuit Court of Kanawha County is affirmed.

Affirmed.