617 S.E.2d 785

CSX HOTELS, INC., dba the Greenbrier Resort, a West Virginia corporation, Plaintiff Below, Appellee,

v.

CITY OF WHITE SULPHUR SPRINGS, West Virginia, Debra Jo Fogus, Chris Hanna, Paul Hobbs, James Hylton, Delores Mattox, Don Mccoy and Rick Romeo, Defendants Below, Appellants.

Frederick W. Kretzer, Carolyn B. Kretzer, and the Greenbrier Sporting Club Development Company, LLC, a Delaware limited liability company, Plaintiffs Below, Appellees,

v.

City of White Sulphur Springs, West Virginia, Debra Jo Fogus, Chris Hanna, Paul Hobbs, James Hylton, Delores Mattox, Don Mccoy and Rick Romeo, Defendants Below, Appellants.

No. 32157.

Supreme Court of Appeals of West Virginia.

Submitted: April 27, 2005.

Filed: July 8, 2005.

Marvin W. Masters, Esq., April D. Ferrebee, Esq., The Masters Law Firm, LC, Charleston, W. Mark Burnette, Esq., Burnette & Burnette, P.L.L.C., Lewisburg, for the Appellants.

Andrew S. Zettle, Esq., Daniel J. Konrad, Esq., Huddleston, Bolen, Beatty, Porter and Copen, L.L.C., Huntington, for the Appellees.

Justice STARCHER delivered the Opinion of the Court.

STARCHER, J.

In this appeal from the Circuit Court of Greenbrier County, we are asked to review a circuit court order permanently enjoining a municipality from going forward with an annexation proceeding pursuant to an annexation petition. The circuit court found that a map of the territory to be annexed that was attached to the petition was not an "accurate survey map" as required by *W.Va.Code*, 8-6-

---

2(a) [2001], because no physical, on-the-ground survey was conducted of the territory. Because the map was prepared using previously-conducted surveys, property descriptions contained in publicly-filed deeds, and other documents, the circuit court determined that the annexation petition was "fatally flawed."

As set forth below, we reverse the circuit court's injunction order.

## I.

### Facts & Background

On January 15, 2003, the appellant City of White Sulphur Springs began proceedings to annex adjacent, unincorporated land into the City's boundaries. Using the procedure set forth in *W.Va.Code*, 8-6-2 [2001],[1] a petition was filed with the City

> ... setting forth the change proposed in the metes and bounds of the municipality and asking that a vote be taken upon the proposed change. The petition shall be verified and shall be accompanied by an accurate survey map showing the territory to be annexed to the corporate limits by the proposed change.

*W.Va.Code*, 8-6-2(a). The metes and bounds description in the petition of the territory to be annexed, and the map of the territory accompanying the petition, were prepared by a registered professional engineer using the calls and distances culled from preexisting surveys, public records and from the deeds describing the boundaries of the various properties in the area to be annexed. These deeds were recorded by the property owners with the Greenbrier County Clerk. No on-the-ground examination or measurement of the proposed new City boundary lines was made.

A significant facility in the territory to be annexed is The Greenbrier Resort. The owners of The Greenbrier and other affiliated properties—who are the appellees and plaintiffs below—did not wish the territory to be annexed, and filed suit against the City to enjoin the annexation process.[2]

---

1. The statute was amended in 2003; no changes were made affecting this appeal.

2. Three lawsuits were filed in the Circuit Court of Greenbrier County; a fourth was filed by the Greenbrier Clinic in federal court.

One of the grounds upon which the appellees sought an injunction was that the City had not performed an actual, on-the-ground survey of their property and the other properties encompassed by the annexation petition, and had therefore not prepared an "accurate survey map" of the territory to be annexed into the City. The City, however, took the position that as long as the map of the territory to be annexed was reasonably accurate, and residents and landowners could determine whether they or their properties were affected by the annexation, then the map was an "accurate survey map" that complied with *W.Va.Code,* 8–6–2(a).[3]

Early in the litigation, comments by the circuit court indicated the court's belief that *W.Va.Code,* 8–6–2(a) required a detailed, physical, on-the-ground survey. Therefore, before engaging in protracted, expensive litigation over the factual accuracy of the description and map of the territory to be annexed, the parties agreed to submit to the circuit court the narrow legal question of whether an on-the-ground survey was required or not.

On February 9, 2004, the circuit court entered a "Final Order Granting Permanent Injunction" against the City. Applying several dictionary meanings, the circuit court found, as a matter of law, that the City's annexation petition was not accompanied by an "accurate survey map" as required by *W.Va.Code,* 8–6–2(a) because the map was not "accurate" and "free from error or defect ... careful or meticulous;" and was not a "survey" because it did not involve "the process by which a parcel of land is measured and its boundaries and contents ascertained." The circuit court found the City's January 15, 2003 petition for annexation to be "fatally flawed," and permanently enjoined the City from taking any action pursuant to the petition.

The City now appeals the circuit court's February 9, 2004 order.

## II.

### Standard of Review

■ "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

### Discussion

■ The appellant City challenges the circuit court's interpretation of the phrase "accurate survey map" in *W.Va.Code,* 8–6–2(a). The appellant argues that the statute requires the production of a reasonably accurate map so as to permit residents and landowners, of the municipality and of the territory to be annexed, to quickly determine whether they are or are not affected by an annexation petition. The appellant also argues that the annexation survey map need only be accurate enough to determine which properties are within the City's boundaries for purposes of voting, taxation, and the provision of services. The appellant takes the position that the statute does not require the production of a precise, on-the-ground survey sufficient to resolve boundary disputes between property owners. The appellant contends that a map prepared using previously prepared surveys or using property descriptions contained in other documents, such as the publicly-filed deeds to the land being annexed, are sufficient.

The appellees counter that the Legislature chose the phrase "accurate survey map" to indicate the map had to be (1) precise and (2) prepared from measurements done in an ac-

---

**3.** The appellants point out that the appellees do not—and cannot—contend that they did not know whether their property was encompassed within the territory to be annexed, because the annexation petition specifically identifies the appellees' property as the territory being annexed. The petition states:

The popular name for this territory to be annexed is the business district from approximately an area on U.S. Route 60 known as Pines Curve just West of the Harts Run interchange of Interstate 64 to the current corporate limits of White Sulphur Springs, and all land currently or formerly owned by The Greenbrier Sporting Club and CSX Hotels, Inc. d/b/a The Greenbrier Resort, as well as their related companies.

tual survey performed by a person qualified to perform surveys. The appellees argue that *W.Va.Code,* 8–6–2(a) must be read in conjunction with the statutes pertaining to the licensing and practice of land surveyors, *W.Va.Code,* 30–13A–1 to –37 [2004], which direct that all "survey" maps must be prepared by a licensed land surveyor in a manner conforming to specific technical standards.

We can find no definition of "accurate survey map" in *W.Va.Code,* 8–6–2, or any other portion of the *Code* pertaining to the annexation process. "[W]here there is some ambiguity in the statute or some uncertainty as to the meaning intended ... resort may be had to rules of construction of statutes." *Crockett v. Andrews,* 153 W.Va. 714, 718, 172 S.E.2d 384, 386–87 (1970) (*quoting* 17 M.J., Statutes, § 31). "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syllabus Point 1, *Miners in General Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941). *In accord,* Syllabus Point 6, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning.")

*Black's Law Dictionary* (5th Ed.1979) defines a "survey" as a "process by which a parcel of land is measured and its boundaries and contents ascertained; also a map, plat, or statement of the result of such survey, with the courses and distances and the quantity of the land." Nowhere in the definition of "survey" do we find that a survey is exclusively a process by which land is physically measured "on the ground" and boundaries established by direct observation. Instead, it is merely *any* process by which an area of land is measured, and its boundary determined—even if done by indirect means.

The appellees contend that, in order for the measurement of land boundaries to be accurate, the measurement must be done by some physical examination of the land. The appellees contend—again referring to the various statutory requirements regulating the profession of land surveying—that a proper, accurate survey is one that establishes boundary monuments, and clearly measures distances and angles using conventional survey equipment or using global positioning system equipment.

The City, however, asserts that the direct-observation survey methods proposed by the appellees would be cost prohibitive, making the annexation process nearly impossible for most municipalities. Furthermore, because of the size of the tracts of land owned by the appellees—apparently encompassing several thousand acres—a physical, on-the-ground survey would be highly impractical. That impracticability becomes even more apparent, according to the City, because a physical survey of the boundaries of the appellees' tracts would require a surveyor to trespass onto the appellees' lands. Finally, the City contends that while such a survey would result in a detailed report sufficient to resolve boundary disputes between property owners, such elegant detail is not necessary for purposes of putting the citizenry on notice regarding who will be impacted by the annexation.

The appellants argue that the measurement and determination of land boundaries can be accurately accomplished for purposes of annexation by compiling the distances and courses contained in preexisting surveys, in the boundary descriptions within the deeds of the properties that are to be annexed into a municipality, or in other records. We agree.

While we do not believe that the statutes pertaining to the licensing and practice of land surveyors are controlling on the issue of annexation,[4] the language contained within those statutes guides us in accepting the correctness of the appellant's argument.

---

4. This is because the statutes specifically exempt from regulation and licensing any person working for a municipality. *W.Va.Code,* 30–13A–36(a)(2) [2004] exempts from regulation and licensing "[a]ny employee or officer of the United States, this state or any political subdivision thereof, or their agents, when such employee is engaged in the practice of land surveying exclusively for such governmental unit."

For example, *W.Va.Code*, 30–13A–3(hh) [2004] defines the practice of land surveying as including the act of determining the configuration or contour of the Earth's surface, or the position of fixed objects thereon, "using such sciences as ... photogrammetry,[5] and ... making geometric measurements and gathering related information pertaining to the physical or legal features of the earth, improvements on the earth, the space above, on or below the earth[.]" In other words, it appears that even licensed land surveyors may determine a point, line, object or area on the surface of the Earth by using geometric measurements taken from sources other than direct, physical, on-the-ground observations. The statute recognizes those sources can include aerial photography, or sources identifying "improvements" and "legal features of the earth."

Furthermore, the circuit court concluded that an "accurate" survey is one which is "free from error or defect ... precise; careful or meticulous." However, *W.Va.Code*, 30–13A–26(g) [2004]—which sets forth "minimum technical criteria" governing surveys of property boundaries—states that while distance must be "reported in feet or meters, or parts thereof," and angles or directions "reported in degrees or parts thereof," these observations must only be "measured to a precision that will produce the desired level of accuracy." Further, the quantity or area of land within the boundary must only be "measured and reported to a precision consistent with the purpose of the survey." In sum, even a boundary survey of a single tract of land by a licensed land surveyor need not be precise and free from any error or defect; such a survey must only reach the desired level of accuracy consistent with the purposes of the survey.

■ We therefore hold that in an annexation proceeding initiated by a municipality under *W.Va.Code*, 8–6–2(a), an "accurate survey map" is a map reflecting the course and distance measurements, boundaries, and contents of the territory that is proposed to be incorporated into the municipality's limits. The map must reach the desired level of precision consistent with the purposes of the survey, namely to provide notice to residents and freeholders of the municipality and the territory encompassed by the annexation petition of a potential change regarding who will vote in municipal elections; taxation and revenues; and the provision of services.

■ We believe that the circuit court erred by concluding, that the survey map attached to the City's annexation petition, as a matter of law, was required to be absolutely free from error or defect and could not be assembled from preexisting surveys or boundary descriptions contained in deeds filed with the county clerk.[6] A municipality may prepare an annexation survey map by whatever means it chooses, so long as the map is of reasonable accuracy such that residents and landowners in the City and in the territory to be annexed can easily understand which parcels of land are being incorporated into the City's boundaries.

## IV.

### Conclusion

The circuit court's February 9, 2004 order granting an injunction is reversed, and the

---

5. *W.Va.Code*, 30–13A–3(z) [2004] states that " '[p]hotogrammetry' means the use of aerial photography, other imagery and surveying principles to prepare scaled maps or other survey products reflecting the contours, features and fixed works of the earth's surface."

6. The circuit court also found that the map and description attached to the annexation petition was "grossly inaccurate" because the metes and bounds description had numerous "closure" errors of gaps and overlaps. The appellees assert that the original annexation petition had a "closure" error of 2,204.16 feet; they assert a corrected petition had a closure error of 950.93 feet, altering the impact of the petition on some 130 acres. The City disputes these numbers, and asserts that the closure error is only three feet.

The City raises as a second point of error that the circuit court should not have accepted the testimony by the appellees' expert, to the effect that the City's map and description were inaccurate. We decline to consider this factual point of error because we are able to resolve the appeal on a purely legal question. On remand, the circuit court should endeavor to consider the parties' factual positions, and determine whether the map and description of the parcel to be annexed are sufficiently accurate for purposes of *W.Va. Code*, 8–6–2(a).

case is remanded to the circuit court for further proceedings.

Reversed and Remanded.