**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 05-1471**

HELLEN L. DELAWDER,

Plaintiff - Appellant,

versus

AMERICAN WOODMARK CORPORATION,

Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Elkins.  Robert E. Maxwell, Senior District Judge.  (CA-02-11-2)

Argued:  March 15, 2006      Decided:  April 25, 2006

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jimmy Lynn Hill, RITCHIE LAW FIRM, P.L.C., Winchester, Virginia, for Appellant.  Daniel R. Schuda, SCHUDA & ASSOCIATES, P.L.L.C., Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellant Hellen Delawder appeals an order of the district court granting summary judgment to Appellee American Woodmark Corporation ("Woodmark") in this personal injury diversity action. Delawder contends that the district court erred in granting summary judgment to Woodmark because she demonstrated a material issue of fact on each of the five elements of W.V. Code § 23-4-2(c)(2)(ii) necessary to abrogate Woodmark's immunity as Delawder's employer under the West Virginia Workers' Compensation Act ("The Act") and allow her to proceed against Woodmark in tort. Because Delawder has not demonstrated that a "statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved" in her accident, as required by W.V. Code § 23-4-2(c)(2)(ii)(C), we affirm the district court order.


I.

On June 28, 2000, Delawder suffered a serious workplace injury while employed by Woodmark when her hand became trapped in moving components of a robotic paint spray machine. Woodmark employed Delawder as an operator of the paint spray machine on one of its assembly production lines that manufactured kitchen cabinets and vanities. As pieces of cabinetry moved down this assembly line, rotating metal bands carried them through the paint spray machine where the cabinetry was painted. During this process, the metal

2

bands became covered in excess paint. After the metal bands passed the cabinetry out of the paint spray machine, the bands rotated under the paint spray machine and passed through a solvent to remove the excess paint. The metal bands then passed over a felt roll to remove any additional excess paint before rotating upwards to begin the process anew.

During the course of a day, this felt roll wore down and lost its efficacy. Delawder's job required her to maintain the felt roll and either realign or replace it as the roll became worn. Delawder accessed the felt roll through an opening on the underside of the paint spray machine. This opening also exposed other internal moving components of the machine.

On the day of her accident, Delawder bent down to check the status of the felt roll and determine whether she could wait until the next scheduled break to replace it. Although the paint spray machine normally has a machine guard that covers the opening in order to prevent employees from coming into contact with the moving parts of the machine, the guard was not present on the day of Delawder's accident and had been missing for some prior period of time. Delawder testified, however, that had the guard been present, she would have removed it to inspect and conduct maintenance on the felt roll, as this was her common practice. As Delawder bent down to inspect the felt roll, her supervisor startled her and she jerked upward. As she did so, her hand came

3

into contact with and became trapped in the internal components of the paint spray machine, causing significant injury.

Delawder's employment caused her to be covered by the West Virginia Workers' Compensation Act. That statute provides the exclusive remedy for an employee injured in the line of work, except where the injury arises from the "deliberate intention" of the employer. See W.V. Code §§ 23-2-6, 23-4-2(d)(2). Delawder filed this diversity action seeking to invoke the "deliberate intention" exception against Woodmark by proving the following five elements set out in § 24-3-2(d)(2)(ii)(A) - (E):[1]

> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;
>
> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute,

---

[1]A plaintiff can also establish "deliberate intention" by proving that the employer "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee." W.V. Code § 23-4-2(d)(2)(I). Delawder does not contend that Woodmark meets this standard.

4

rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W.V. Code § 23-4-2(d)(2)(ii)(A)-(E).

After Delawder filed this action and the parties conducted discovery, Woodmark filed a motion for summary judgment arguing that Delawder could not establish a material issue of fact on subsections (A), (B) or (C) of § 23-4-2(c)(2)(ii). The district court granted Woodmark's motion and held that Delawder created an issue of fact on subsections (A) and (B), but failed to do so on subsection (C). On appeal, neither party challenges the district court's ruling on subsections (A) and (B). The only issue before us is whether the district court properly held that Delawder failed to establish "[t]hat the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation. . . ." W.V. Code § 23-4-2(d)(2)(ii)(C).

We review the district court's grant of summary judgment de novo, viewing all evidence in the light most favorable to the non-moving party. Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006)

5

(en banc).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  For the reasons that follow, we find no error in the district court's conclusion.

II.

In order to protect the integrity of the workers' compensation scheme, the West Virginia legislature adopted the "deliberate intention" exception as a narrow departure from the general rule that the Workers' Compensation Act provides the exclusive remedy for employees' on-the-job injuries.  See W.V. Code § 23-4-2(d)(1); Handley v. Union Carbide Corp., 804 F.2d 265, 269 (4th Cir 1986).  Any analysis of whether an employer acted with deliberate intention is limited to a consideration of the five statutory elements set out in § 23-4-2(d)(2)(ii), and in order to survive summary judgment, a plaintiff must make a prima facie showing of a disputed fact as to each.  See W.V. Code § 23-4-2(d)(1); Deskins v. S.W. Jack Drilling Co., 215 W. Va. 525, 528, 600 S.E.2d 237, 240 (2004).

As subsection (c) is the only element of the analysis at issue here, Delawder must demonstrate an issue of fact as to whether

6

Woodmark violated a statute, rule or regulation that specifically "applied to the alleged unsafe working condition" underlying her injury. Tolley v. ACF Indus., Inc., 212 W. Va. 548, 557, 575 S.E.2d 158, 167 (2002). In determining whether she meets that burden, we bear in mind the stated intent of the West Virginia legislation "to remove from the common law tort system all disputes between . . . employers and employees regarding the compensation to be received for injury . . ." and "to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system . . . standard of willful, wanton and reckless misconduct." W.V. Code § 23-4-2(d)(1).

Delawder argues that she identified one federal regulation, 29 C.F.R. § 1910.212, and two state statutes, W.V. Code §§ 21-3-2, -4, that satisfy subsection (C) by imposing machine guarding safety standards that are "specifically applicable to the particular work and working condition involved" in her injury. W.V. Code § 23-4-2(c)(2)(ii)(C). However, even assuming that these provisions are otherwise sufficiently particularized with respect to Delawder's work and working conditions, each contains either limiting language or an exception that defeats her argument.

1.   29 C.F.R. § 1910.212 & W.V. Code § 21-3-2

Delawder argues that Woodmark violated W.V. Code § 21-3-2 and 29 C.F.R. § 1910.212(a)(1)-(a)(3)[2] by failing to install effective machine guards on the paint spray machine.  Section 21-3-2 of the West Virginia Code requires machine guarding "where practicable," while 29 C.F.R. § 1910.212(a)(2) requires such guarding "where possible."  The record reveals that Woodmark outfitted the paint spray machine with guards that covered the internal components of the machine and prevented access thereto.  At the time of her accident, however, Delawder was engaged in work that required the removal of these guards.  Indeed, Delawder testified that she would have removed the guards had they been present on that day.  Given her acknowledgement, we do not believe that the safety standards reflected in these two provisions could be "specifically applicable to the work and working condition involved" in Delawder's accident; it would have been neither possible nor practicable to guard against work that required an operator to access the very areas of the paint spray machine covered by the guards.

Delawder counters that Woodmark should have installed interlocked machine guards that stopped the drive mechanism of the

---

[2]For the first time on appeal, Delawder argues that 29 C.F.R. § 1910.212(a)(4), which imposes heightened regulatory requirements on revolving drums, barrels and containers, also applies to the work she was engaged in at the time of her accident.  Delawder waived this argument by failing to raise it in the district court below.  Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993).  Thus, we do not address it.

8

paint spray machine when removed and that such guards would have prevented her injury.  We disagree.  We have carefully reviewed 29 C.F.R. § 1910.212(a)(1)-(a)(3) and W.V. Code § 21-3-2, and cannot find language in either that would impose such a duty.

  2.  W.V. Code § 21-3-4

Delawder argues that Woodmark violated § 21-3-4 by allowing employees to remove guards on the paint spray machine without promptly replacing them.  Section 21-3-4 of the West Virginia code prohibits the removal of machine guards required by § 21-3-2, "except for the purpose of immediately making repairs thereto . . . ."  W.V. Code § 21-3-4.  The record reveals that Delawder was in the process of inspecting and conducting repairs to the felt roll at the time of her accident.[3]  The fact that the guards were

---

[3]Delawder argues that she was not conducting repairs within the meaning of the statute at the time of her injury.  Unfortunately, the West Virginia legislature did not define the term "repair" and no West Virginia court has defined the term within the context of this statute.  Therefore, we must predict how the West Virginia Supreme Court would define this term if it had to confront this issue.  See Doe v. Doe, 973 F.2d 237, 240 (4th Cir. 1992) (federal court sitting in diversity must predict how a state court would decide an issue).

  Although § 21-3-4 does not define "repair," the West Virginia Supreme Court has previously adopted a dictionary definition of the term, albeit in a different context.  See Mozingo v. Wellsburg Elc. Light, Heat & Power Co., 101 W. Va. 79, 81, 131 S.E. 717, 718 (1926).  In addition, West Virginia courts routinely refer to dictionaries to define terms.  CSX Hotels, Inc. v. City of White Sulphur Springs, 217 W. Va. 238, 617 S.E.2d 785, 788 (2005); Coordinating Council for Ind. Living, Inc. v. Palmer, 209 W. Va. 274, 281, 546 S.E.2d 454, 461 (2001); Lawyer Disciplinary Bd. v. Allen, 198 W. Va. 18, 35, 479 S.E.2d 317, 334 (1996).  Accordingly, we believe that the West Virginia courts would apply the common dictionary definition of the term "repair" if they were presented

missing on that day is immaterial because the work underlying Delawder's injury (repairing the felt roll) allows for such removal and Delawder testified that she would have removed the guards had they been present, in any event. Based on these facts, we do not believe that Delawder demonstrated an issue of fact on whether Woodmark violated W.V. Code § 21-3-4 for purposes of W.V. Code § 24-3-2(c)(2)(ii)(C).

At bottom, Delawder has not cited any "statute, rule, regulation or standard [that] was specifically applicable to the particular work and working condition involved" in her accident and, therefore, cannot avoid Woodmark's immunity from suit under the West Virginia Workers' Compensation Act. W.V. Code § 23-4-2(c)(2)(ii)(C).

## III.

In light of the foregoing, we affirm the order of the district court.

AFFIRMED

---

with this issue.
   The verb "repair" is defined as "to restore to a good or sound condition after decay or damage." The Random House Dictionary of the English Language, 1632 (Stuart Berg Flexner ed., Random House 2nd Ed.) (1987). Based on this definition of "repair," we believe that Delawder was conducting repairs at the time of her accident because she was in the process of restoring the felt rolls on the paint spray machine to a "good or sound condition." Id.

10