# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JAMES ROBERT HENDRICKS,**
**Applicant Below, Petitioner**

**v.)** **No. 24-ICA-448** (W. Va. Consol. Pub. Ret. Bd. (In Re: James Robert Hendricks))

**WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD,**
**Respondent Below, Respondent**

**FILED**

**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James Robert Hendricks appeals the October 9, 2024, order of the West Virginia Consolidated Public Retirement Board ("Board"), which found that Mr. Hendricks, a member of the Teachers Retirement System ("TRS"), was not eligible to purchase military service credit. The Board filed a response.[1] Mr. Hendricks filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For these reasons, the Board's decision is reversed.

This appeal centers on whether the Board erred in its determination that Mr. Hendricks is ineligible to receive military service credit towards his TRS retirement annuity pursuant to statute. Because the Board's determination was predicated upon its application of relevant statutes, we briefly pause to place the relevant historical background of military service credit for TRS members in context before delving into the facts of this case.

In 2005, the West Virginia Legislature enacted West Virginia Code § 18-7A-17 (2005) ("2005 Statute"), which pursuant to subsection (b), stated:

> For the purpose of this article, the Retirement Board shall grant prior service credit to new entrants and other members of the retirement system for service in any of the Armed Forces of the United States in any period of national emergency within which a federal Selective Service Act was in effect. For

---

[1] Mr. Hendricks is represented by Kimberly G. Dotson, Esq. The Board is represented by J. Jeaneen Legato, Esq.

1

purposes of this section, "Armed Forces" includes Women's Army Corps, women's appointed volunteers for emergency service, Army Nurse Corps, SPARS, Women's Reserve and other similar units officially parts of the military service of the United States. The military service is considered equivalent to public school teaching, and the salary equivalent for each year of that service is the actual salary of the member as a teacher for his or her first year of teaching after discharge from military service. Prior service credit for military service shall not exceed ten years for any one member, nor shall it exceed twenty-five percent of total service at the time of retirement. Notwithstanding the preceding provisions of this subsection, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Section 414(u) of the Internal Revenue Code. For purposes of this section, "qualified military service" has the same meaning as in Section 414(u) of the Internal Revenue Code. The Retirement Board is authorized to determine all questions and make all decisions relating to this section and, pursuant to the authority granted to the Retirement Board in section one, article ten-d, chapter five of this code, may promulgate rules relating to contributions, benefits and service credit to comply with Section 414(u) of the Internal Revenue Code. No military service credit may be used in more than one retirement system administered by the Consolidated Public Retirement Board.

W. Va. Code § 18-7A-17(b) (2005).

In 2013, this portion of the statute was amended to limit the TRS members eligible for military service credit to those who were "honorably discharged from active duty service in any of the Armed Forces of the United States in any period of national emergency within which a federal Selective Service Act was in effect." W. Va. Code § 18-7A-17(b) (2013) ("2013 Statute"). Notably, neither the 2005 nor 2013 statutes contained any other qualifying language or otherwise imposed time limitations upon a TRS member's eligibility for military service credit.

In 2015, the Legislature passed West Virginia Code § 18-7A-17a (2015) ("2015 Statute"), a standalone statute, which amended and recodified the statutory scheme governing TRS military service credit. The 2015 Statute provides:

Except as provided in subsection (b) of this section, for the purpose of this article, the retirement board shall grant prior service credit to members of the retirement system who were honorably discharged from active duty service in any of the Armed Forces of the United States in any period of national emergency within which a federal Selective Service Act was in effect. For purposes of this section, "Armed Forces" includes Women's Army Corps, women's appointed volunteers for emergency service, Army Nurse Corps,

2

SPARS, Women's Reserve and other similar units officially part of the military service of the United States. The military service is considered equivalent to public school teaching, and the salary equivalent for each year of that service is the actual salary of the member as a teacher for his or her first year of teaching after discharge from military service. Prior service credit for military service shall not exceed ten years for any one member, nor shall it exceed twenty-five percent of total service at the time of retirement. Notwithstanding the preceding provisions of this subsection, contributions, benefits and service credit with respect to qualified military service shall be provided in accordance with Section 414(u) of the Internal Revenue Code. For purposes of this section, "qualified military service" has the same meaning as in Section 414(u) of the Internal Revenue Code. The retirement board is authorized to determine all questions and make all decisions relating to this section and, pursuant to the authority granted to the retirement board in § [5-10D-1] of this code, may promulgate rules relating to contributions, benefits and service credit to comply with Section 414(u) of the Internal Revenue Code. No military service credit may be used in more than one retirement system administered by the Consolidated Public Retirement Board.

W. Va. Code § 18-7A-17a(a) (2015).

Moreover, subsection (b) of the 2015 Statute provides that TRS members who were employed prior to July 1, 2015, but do not qualify for credit under subsection (a), may qualify for military service credit. In that respect, West Virginia Code § 18-7A-17a(b) (2015) directly states:

(1) Any member may purchase up to sixty months of military service credit for time served in active military duty prior to first becoming an employee of a participating public employer if all of the following conditions are met:

(A) The member has completed a complete fiscal year of contributory service;

(B) The active military duty occurs prior to the date on which the member first becomes an employee of a participating public employer; and

(C) The employee pays to the retirement system the actuarial reserve purchase amount within forty-eight months after the date on which employer and employee contributions are first received by the retirement system for the member and while he or she continues to be in the employ of a participating public employer and contributing to the retirement

3

system, or within forty-eight months of July 1, 2015, whichever is later: *Provided*, That any employee who ceases employment with a participating public employer before completing the required actuarial reserve purchase amount in full shall not be eligible to purchase the military service.

The 2015 Statute also placed limitations upon the timeframe in which TRS members could seek military service credit under subsection (b), stating in West Virginia Code § 18-7A-17a(b)(8):

To receive credit, a member must submit a request to purchase military service credit to the board, on such form or in such other manner as shall be required by the board, within the complete fiscal year period required by subdivision (1), (2), (3) or (4) of this subsection, as applicable. The board shall then calculate the actuarial reserve lump sum purchase amount, which amount must be paid by the member within the 48-month period required by said subdivisions, as applicable. A member purchasing military service credit pursuant to this subsection must do so in a single, lump sum payment: *Provided*, That the board may accept partial, installment or other similar payments if the employee executes a contract with the board specifying the amount of military service to be purchased and the payments required: *Provided, however,* That any failure to pay the contract amount in accordance with this section shall be treated as an overpayment or excess contribution subject to [§18-7A-14c] of this [code] and no military service shall be credited.

We recognize that since its enactment in 2015, West Virginia Code § 18-7A-17a was amended by the Legislature in 2016 and 2025. However, other than making stylistic changes, the operative language of subsections (a) and (b) were unaffected by those amendments. With this backdrop in mind, we return to the matter at hand.

Mr. Hendricks enlisted in the Navy in 1974. He served in active duty for four years, ten months, and eighteen days, which included service abroad during the Vietnam War. He was honorably discharged from the Naval Reserve on September 26, 1980.

Mr. Hendricks has been employed as a science teacher at Morgantown High School since July 2006 and is a Tier I TRS member.[2] According to Mr. Hendricks, when he accepted this employment, it was represented to him by the Human Resources Director for

---

[2] Tier I refers to TRS members who were hired before July 1, 2015. Those hired for the first time and became a TRS member on or after July 1, 2015, are Tier II. The Tiers carry different benefits.

the Monongalia County Board of Education ("BOE") that he would receive military service credit towards his TRS retirement annuity.

In March 2024, Mr. Hendricks submitted a retirement estimate request to the Board ("2024 Estimate") and attached a copy of his DD-214.[3] By letter dated March 18, 2024, the Board advised Mr. Hendricks that he was not eligible for military service credit because Tier I members were required to request military service credit prior to June 30, 2016. *See* W. Va. § 18-7A-17a(b)(8).

Mr. Hendricks filed his administrative appeal on April 19, 2024, and a hearing was held before the Board's hearing officer on August 6, 2024. Mr. Hendricks testified on his own behalf, and the Board relied upon the testimony of the Board's Deputy Director and CEO, Terasa Miller. At the hearing, the Board introduced three exhibits. The first was a newsletter called *TRS Pension Press*, which was created by the Board and mailed to its TRS members along with each member's annual statement of contributions. Although it is undated, from the context of the newsletter it was issued in late 2015 or early 2016. According to the Board, the import of this newsletter is that it informed Tier I members:

> A time sensitive legislative amendment made through Senate Bill 529 passed during the 2015 Legislative Session now allows TRS Tier 1 members not eligible to be granted prior military service credit during the "Draft" period to purchase up to sixty months (5 years) of military service credit for time served in active duty if they meet the following conditions: (1) The member actively contributes to TRS for a complete fiscal year after July 1, 2015; (2) The active duty military service occurred prior to first becoming an employee of a TRS employer; and (3) TRS Tier 1 member pays to TRS the actuarial reserve purchase amount in full by July 1, 2019, while actively employed.

The newsletter referenced the 2015 Statute and stated: "TRS Tier 1 members who work a complete fiscal year in 2015-2016 must notify TRS in writing no later than June 30, 2016 of their request to receive a cost calculation to purchase military service credit[.]"

---

[3] Mr. Hendricks submitted an earlier retirement estimate request in 2019 ("2019 Estimate"). As part of this inquiry, the Board requested a copy of his DD-214, which Mr. Hendricks provided. After receiving the Estimate, Mr. Hendricks determined that he did not have sufficient annuity funds to retire. The 2019 Estimate provided zero credit for his military service; however, Mr. Hendricks maintains he received no accompanying correspondence from the Board stating that he was ineligible for military service credit. Regardless, the 2019 Estimate has no bearing on Mr. Hendricks' 2024 Estimate or the proceedings which led to this appeal.

Next, the Board introduced two brochures, which were created by the Board and distributed to TRS members. The first was from November 2014 ("2014 Brochure") and the second from February 2016 ("2016 Brochure"); relevantly, each contained information regarding military service credit. The 2014 Brochure stated, in pertinent part: "[m]embers shall be given military service credit for service in any of the Armed Forces of the United States during any period of national emergency within which the Federal Selective Service Act (Draft) was in effect." Conversely, the 2016 Brochure stated that "[m]ilitary service will be credited in accordance with [West Virginia Code] § 18-7A-17a." The 2016 Brochure then distinguished military service credit between those Tier I members who served *during* the Draft from those whose service was performed *after* the Draft, stating in relevant part:

> **Military Service during the Draft** – Tier I members shall be given military service credit for service in any of the Armed Forces of the United States during any period of national emergency within which the Federal Selective Service Act (Draft) was in effect[.]

> **Military Service after the Draft** – Tier I members may be eligible to purchase up to sixty months of active duty military service for military service performed prior to employment with a TRS employer. To determine eligibility to purchase military service, the member <u>must</u> submit a *Request to Purchase Military Service Credit* form to the [Board] <u>during</u> the first complete fiscal year of contributory retirement service completed after July 1, 2015.

Through Ms. Miller's testimony, the Board maintained that Mr. Hendricks voluntarily enlisted in the Armed Forces and, thus, the Board's three exhibits established that Mr. Hendricks was ineligible to receive military service credit because he did not timely submit a request to purchase credit with the Board.

On September 23, 2024, the hearing officer filed their recommendation with the Board, which recommended that the Board find Mr. Hendricks ineligible for military service credit. In support of this recommendation, the hearing officer reasoned that when Mr. Hendricks was hired in 2006, the 2005 Statute only permitted those TRS members who had been drafted to receive military service credit. Because Mr. Hendricks chose to enlist in the military, he was not automatically eligible for credit and any representation to the contrary by the BOE was incorrect. The hearing officer further reasoned that when the 2015 Statute was adopted, it permitted Tier I TRS members to receive credit for their undrafted military service if they applied for military service credit within one fiscal year of July 1, 2015, and that this information was provided to Mr. Hendricks and other TRS members in the *TRS Pension Press* and 2016 Brochure. However, because Mr. Hendricks did not timely apply for credit, he was ineligible.

6

On October 9, 2024, the Board entered its order adopting the hearing officer's recommendation verbatim. This appeal followed.[4]

In this appeal, we apply the following standard of review:

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021). "An appeal of a decision as to the conclusions of law and application of law to the facts, is reviewed *de novo*." *Stemple v. W. Va. Consol. Pub. Ret. Bd.*, 251 W. Va. 121, 909 S.E.2d 634, 637 (Ct. App. 2024) (citing *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000)).

On appeal, Mr. Hendricks contends that the Board erred in its determination that his non-draft status precluded his eligibility for military service credit. Here, Mr. Hendricks contends when he was hired in 2006, the Board was required to grant him credit for his prior active duty military service pursuant to the plain language of the 2005 Statute. Notwithstanding this statute, Mr. Hendricks further argues that the Board erred by not finding that he was entitled to credit under the mandatory language of the 2015 Statute, and erroneously limited his eligibility for credit upon the provisions of West Virginia Code § 18-7A-17a(b).[5] In support of his argument, Mr. Hendricks cites mirroring language from

---

[4] The hearing officer's recommendation also set forth a basis for rejecting Mr. Hendricks' detrimental reliance claim, which was also adopted by the Board. However, because we resolve this appeal on other grounds, we will not address Mr. Hendricks' challenge to that determination in this decision.

[5] Mr. Hendricks' appeal also contains assignments of error asserting that he holds a vested property right in his military service credit, and that he had insufficient notice of the deadline to purchase military service credit pursuant to West Virginia Code § 18-7A-

7

both the 2005 and 2015 Statutes that states that the Board "shall grant prior service credit to new entrants and other members of the retirement system for service in any of the Armed Forces of the United States *in any period of national emergency within which a federal Selective Service Act was in effect*." *Compare* W. Va. Code § 18-7A-17(b), *with* W. Va. Code § 18-7A-17a(b) (emphasis added). Mr. Hendricks maintains that nothing within this statutory language limits military service credit to only those members who were drafted. On appeal, the Board abandons its earlier position that the statutes only apply to TRS members who had been drafted.[6] Instead, the Board now argues that this language means that "only those TRS members who served when the Federal Selective Service Act ([D]raft) was in effect were eligible[.]" For this reason, the Board claims that it properly determined that Mr. Hendricks could only apply for service credit under West Virginia Code § 18-7A-17a(b), which he failed to do in a timely manner. Upon review, we find no merit in the Board's position.

Ultimately, this appeal turns on the Board's interpretation of the phrase "in any period of national emergency within which a federal Selective Service Act was in effect." When considering the meaning of statutory provisions, it is axiomatic that "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). Likewise, "[w]hen a statute is clear and unambiguous[,] and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959); *see also* Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Applying these principles, we conclude that a proper reading of this statutory language cannot support the Board's interpretation. To begin, we observe that the subject language only requires that a TRS member's military service occur during any national emergency "*within* which a federal Selective Service Act was in effect." (emphasis added).[7]

_____

17a(b). However, because we have disposed of this appeal on other grounds, we do not need to address those issues herein.

[6] The Board's brief concedes this issue by stating that "[n]either [the 2005 Statute nor the 2015 Statute] requires [Mr. Hendricks] to have been drafted . . . ."

[7] We acknowledge that unlike the 2015 Statute, the 2005 Statute does not require a TRS member to have an honorable discharge from active military service to be eligible for credit. However, it is undisputed that Mr. Hendricks was honorably discharged from active military service.

Because the term "within" is not defined under the statutes, this Court must look to the commonly understood meaning. *See State v. Soustek*, 233 W. Va. 422, 426, 758 S.E.2d 775, 779 (2014) (quoting *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984)) ("In determining what undefined words and terms in a statute mean, undefined words and terms are given their common, ordinary and accepted meaning."). According to Merriam-Webster's Dictionary, the term "within" means "in or into the scope or sphere of" or "in or into the range of."[8] *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/within (last visited July 24, 2025).

Based upon this definition, we conclude that the Board's interpretation fails to give the term "within" its common meaning. Instead, the Board's reading of the statute rewrites it to read "in any period of national emergency *while* a federal Selective Service Act was in effect." *See Merriam Webster Online*, https://www.merriam-webster.com/dictionary/while (last visited July 24, 2025) (stating that "while" means "during the time that" or "as long as."). As this Court has previously recognized, "It is not for this Court [to] arbitrarily . . . read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Price v. Raleigh Gen. Hosp., LLC*, 251 W. Va. 508, ___, 914 S.E.2d 743, 749 (Ct. App. 2025) (quoting Syl. Pt. 11, *Brooke B. v. Ray C., II*, 230 W. Va. 355, 738 S.E.2d 21 (2013)). Instead, courts are charged with giving effect to the intent of the Legislature.

Here, we conclude that the Board's interpretation fails to give effect to the intent of the Legislature. We further conclude that in order to embody the Legislature's intent, the phrase "in any period of national emergency within which a federal Selective Service Act was in effect," must be interpreted to mean that the Board is required to provide military service credit to any TRS member whose military service occurred in a period of national emergency, and there must have been a Selective Service Act in effect during that national emergency, but the military service need not have taken place during that Selective Service Act (Draft). However, our inquiry does not stop here.

Rather, taking this reading, another critical issue becomes the definition of "national emergency." This term is also not statutorily defined and, thus, must be given its ordinary and accepted meaning. According to Black's Law Dictionary, a "national emergency" means "[a] state of national crisis or a situation demanding immediate and extraordinary national action." *National Emergency*, Black's Law Dictionary (12th ed. 2024). Merriam-Webster's Dictionary defines "national emergency" as "a state of emergency resulting from a danger or threat of danger to a nation from foreign or domestic sources and usually declared to be in existence by governmental authority." *Merriam Webster Online*,

---

[8] The term "within" is used as a preposition in the statute, and we consider the definition as a preposition.

9

https://www.merriam-webster.com/dictionary/national%20emergency (last visited July 24, 2025). *See Brown v. Bernstein*, 49 F. Supp. 728, 731–32 (M.D. Pa. 1943) ("It is to be noted with emphasis that the matter of a national emergency is, and always has been, left to the judgment of the President . . . .[C]ongress throughout the years [has] made little or no distinction between a [s]tate of [n]ational [e]mergency and a [s]tate of [w]ar.").

Given this guidance, we conclude that the definition of "national emergency" is objectively understood to mean a national emergency declared by the President. We find this requirement is met under the facts of this case. Although ignored by the Board's decision, we note that as a matter of public record, President Truman issued Proclamation 2914 on December 19, 1950, which declared the existence of a national emergency. *See* 15 Fed. Reg. 9029-01 (1950); *see* Syl. Pt. 3, *Brown v. Bottom Creek Coal & Coke Co.*, 94 W. Va. 287, 118 S.E. 284 (1923) ("The courts of this state take judicial notice of the laws of the United States, and the proclamations of the President of the United States made in pursuance thereof, and of public notoriety or general public interest."). Although the immediate impetus for this Proclamation was the Korean War, the emergency stayed in effect until September 14, 1978, when it was terminated pursuant to the National Emergencies Act. *See* 50 U.S.C. § 1601 (1976). Moreover, as established both by Ms. Miller's testimony below and public record, and as recognized by the parties in their briefing, a federal Selective Service Act (Draft) was in effect until July 1, 1973, clearly within the above national emergency. Therefore, given these unassailable facts, we conclude that under both West Virginia Code § 18-7A-17(b) and West Virginia Code § 18-7A-17a(a), Mr. Hendricks is entitled to military service credit for his service from September 27, 1974, to September 14, 1978, when the national emergency ended.[9] As such, we reverse the Board's October 9, 2024, order.

Accordingly, we reverse.

Reversed.

**ISSUED:** August 6, 2025

---

[9] In this case, the dispositive facts are either undisputed or matters of public record whose validity is not subject to dispute. As a result, a proper application of the law to the facts only permits the conclusion that Mr. Hendricks is entitled to receive military service credit towards his TRS retirement annuity for the period of active duty service stated above. Thus, we decline to remand this case to the Board because it would be a futile act, and "[t]he law does not require the doing of a futile act." *State v. James Edward S.*, 184 W. Va. 408, 413, 400 S.E.2d 843, 848 (1990), *overruled on other grounds by State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White