IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

FILED

May 8, 2014

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0367

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

ANTHONY SOUSTEK,
Defendant Below, Petitioner

Appeal from the Circuit Court of Morgan County
The Honorable Michael D. Lorensen, Judge
Criminal Action No. 12-F-85

AFFIRMED

Submitted: March 25, 2014
Filed: May 8, 2014

Joseph R. Kinser, Esq.
Public Defender Corporation
Martinsburg, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Christopher S. Dodrill
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*."  Syl. Pt. 1, in part, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

2.     "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

4.     "Undefined words and terms in a legislative enactment will be given their common, ordinary and accepted meaning."  Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

5.     A criminal bail agreement constitutes a financial transaction under the provisions of the identity theft statute set forth in West Virginia Code § 61-3-54 (2010).

Workman, Justice:

This case is before the Court upon the appeal from the circuit court's March 11, 2013, order sentencing[1] the Petitioner, Anthony Soustek, based upon a conditional plea[2] to one felony count of identity theft relating to a bail agreement, one count of misdemeanor simple possession, and one count of a misdemeanor DUI.[3] The conditional plea permitted the Petitioner to appeal the circuit court's ruling denying his motion to dismiss the two felony counts in the indictment relating to identity theft[4] based upon the argument that the criminal

---

[1]The Petitioner was sentenced to two years in the penitentiary for identity theft, ninety days in jail for possession of a controlled substance and fined $100 for the misdemeanor driving under the influence ("DUI") conviction. The sentences were to run consecutively, but all were suspended and the Petitioner was placed on three years probation.

[2]*See* W. Va. R. Crim. P. 11(a)(2) (providing for conditional guilty pleas).

[3]Neither the simple possession count nor the DUI count is the subject of this appeal.

[4]The Petitioner only pled guilty to the identity theft count concerning the false identity he provided on his bail agreement. The other false identity count pertaining to the affidavit used to establish eligibility for court-appointed counsel was dismissed as part of the plea agreement. Consequently, we see no need to address the viability of the false identity charge stemming from the affidavit for court-appointed counsel.

We do note, however, that the provisions of West Virginia Code § 29-21-16(i) (2013) (concerning public defender services and financial guidelines for determining eligibility for legal representation) arguably limit criminal prosecution on falsification of an affidavit to false swearing, *see* West Virginia Code § 61-5-2 (2010) (setting forth elements of false swearing), where false information is provided on an affidavit for court appointed counsel. Specifically, West Virginia Code § 29-21-16(i) provides:

The making of an affidavit subject to inquiry under this

(continued...)

1

bail agreement and the affidavit of eligibility for appointed counsel do not constitute financial transactions as contemplated by the provisions of West Virginia Code § 61-3-54 (2010).[5] Based upon our review of the parties' briefs, arguments, appendix record and all other matters submitted before the Court, we conclude that the circuit court correctly determined that the criminal bail agreement was a financial transaction as contemplated by West Virginia Code § 61-3-54. We therefore affirm the circuit court's decision.

_____

[4](...continued)
> section *does not in any event give rise to criminal remedies against the affiant* nor occasion any civil action against the affiant except for the recovery of costs as in any other case where costs may be recovered and the recovery of the value of services, if any, provided pursuant to this article. *A person who has made an affidavit knowing the contents thereof to be false may be prosecuted for false swearing as provided by law.*

(Emphasis added). The applicability of the foregoing statute to the count against the Petitioner, however, was neither raised below nor in the Petitioner's brief before this Court.

[5]West Virginia Code § 61-3-54 provides:

> Any person who knowingly takes the name, birth date, Social Security number or other identifying information of another person, without the consent of that other person, with the intent to fraudulently represent that he or she is the other person *for the purpose of making financial or credit transactions* in the other person's name, is guilty of a felony, and upon conviction, shall be punished by confinement in the penitentiary not more than five years, or fined not more than one thousand dollars, or both: Provided, That the provisions of this section do not apply to any person who obtains another person's drivers license or other form of identification for the sole purpose of misrepresenting his or her age.

(Emphasis added).

## I. Facts and Procedural History

On April 6, 2012, shortly before midnight, the police stopped the Petitioner for a defective brake light. The initial traffic stop resulted in the Petitioner being arrested and charged with five misdemeanors, including DUI and simple possession. The Petitioner was taken to appear before a magistrate during the early morning hours of April 7, 2012.

As part of his initial appearance, the Petitioner signed several documents including a document entitled "Criminal Bail Agreement: Cash or Recognizance" and an affidavit to establish eligibility for appointed counsel. On these documents the Petitioner provided his brother's name, Alexander Soustek.[6] It is undisputed that the Petitioner gave[7] the magistrate false information. As the Petitioner's counsel acknowledged in the hearing on the motion to dismiss the indictment, the Petitioner "gave false information on the document and certainly that's not behavior that we should condone." Based upon the information provided to the magistrate by the Petitioner, the magistrate set bail at $1,700, cash or surety.

---

[6]During oral argument, the Petitioner's counsel indicated that the Petitioner gave his brother's name because the Petitioner's driver's license was suspended at the time.

[7]In his appellate brief, the Petitioner argues that he did not fill out the documents at issue; instead, he maintains that "[i]t is common practice, at least in Morgan County, for the Magistrate to fill out all of the paperwork associated with arraignment, including the Criminal Bail Agreement and Affidavit for Appointed Counsel." While there is no evidence regarding this "common practice" in the record before the Court, under the provisions of West Virginia Code § 61-3-54 it is not relevant whether the Petitioner filled out the paperwork. *See supra* note 5.

3

After the magistrate set bail, but before the Petitioner paid the bail amount, the Petitioner's brother, Alexander, discovered that the Petitioner had given the police his name when the Petitioner was arrested. The Petitioner's brother contacted the Eastern Regional Jail and someone at the jail contacted the police concerning the Petitioner's use of his brother's name.

On September 11, 2012, the Petitioner was indicted on two counts of identity theft in accordance with the provisions of West Virginia Code § 61-3-54. *See* note 5 *supra*. The Petitioner moved to dismiss the identity theft counts in the indictment arguing that the use of his brother's name on the bail agreement and the affidavit for appointment of counsel was not "for the purpose of making financial or credit transactions." *Id*. On November 27, 2012, the circuit court conducted a hearing on the Petitioner's motion. The circuit court denied the motion during the hearing, specifically finding that "bail is a financial transaction."[8] On December 17, 2012, the Petitioner entered a conditional guilty plea,[9] which allowed him to pursue the instant appeal of the circuit court's ruling denying his motion to dismiss the identity theft counts in the indictment.[10]

---

[8]The order memorializing the circuit court's denial of the motion was not entered until March 22, 2013.

[9]The circuit court's order sentencing the Petitioner pursuant to the conditional plea was entered on March 8, 2013.

[10]*See supra* note 4.

## II. Standard of Review

"This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*." Syl. Pt. 1, in part, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009). Further, in light of this case involving an issue that is purely one of statutory interpretation, we have previously held as follows: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). With these principles in mind, we proceed to consider whether the circuit court erred in refusing to dismiss the felony identity theft count relating to the criminal bail agreement[11] against the Petitioner.

## III. Discussion of Law

The crux of this case focuses upon whether entering into a bail agreement constitutes a financial transaction as contemplated by West Virginia Code § 61-3-54. Under the statute, a person must knowingly take the name or other identifying information of another person, without consent, "with the intent to fraudulently represent that he or she is the other person *for the purpose of making financial or credit transactions* in the other person's name[.]" *Id.* (emphasis added). The Petitioner argues that because "financial transaction" is undefined within the statute, "common sense would suggest that there has to be an exchange of money for goods or services (or in the event of a credit transaction, the exchange

---

[11]*See supra* note 4.

5

of credit for goods or services)."[12]  Thus, the Petitioner maintains that because no money or credit ever exchanged hands, there was no "financial" or "credit" transaction.  Therefore, the circuit court should have dismissed the identity theft counts.  Conversely, the Respondent argues that the Petitioner intended to use his brother's name and identification information to obtain bail.  This conduct, according to the Respondent, constitutes a financial transaction as it "altered the legal relationship between . . . [the Petitioner] and the court."  Additionally, the Respondent asserts that the actual transaction did not have to be completed; rather, all that the State had to prove under the statute was that the Petitioner took his brother's name with the intent to fraudulently represent to the magistrate that the Petitioner was his brother in order to get bail.  *See* W. Va. Code § 61-3-54.

In order to determine whether using someone else's identity, without consent, in order to obtain bail falls within the statutory language as being "*for the purpose of making financial or credit transactions* in the other person's name," we turn to our well-established principles of statutory construction.  The Court first recognizes that  "[w]here the language

[12]The authorities relied upon by the Petitioner are:  1) 18 United States Code § 1956 (2012), which is a federal statute concerning money laundering and includes a  definition of "transaction" within the statute; and 2) *United States v. Laurenzana*, 113 F.3d 689, 692 (7th Cir.), *cert. denied,* 522 U.S. 896 (1997), which is a case concerning mail fraud, conspiracy to commit mail fraud, and money laundering and includes a discussion of "financial transaction" as that term is specifically defined within the money laundering statute. Because both of these authorities concern specific definitions given to the  term "transaction" and the phrase "financial transaction" in the context of a crime that is not identity theft, neither authority is helpful in resolving the issue before the Court.

of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968). Further, "[u]ndefined words and terms in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

Applying these principles to West Virginia Code § 61-3-54, we begin by recognizing that the Petitioner does not argue that the statute is ambiguous and we do not find the language of the statute to be ambiguous. *See Elder*, 152 W. Va. at 571, 165 S.E.2d at 109, Syl. Pt. 2. Instead, the Petitioner contends that because there is no express definition of what constitutes a "financial" transaction as that phrase is used within the statute, we must resort to a "common sense" approach. In determining what undefined words and terms in a statute mean, undefined words and terms are given "their common, ordinary and accepted meaning." *Cohen*, 175 W. Va. at 527, 336 S.E.2d at 173, Syl. Pt. 6, in part; *see State v. Sulick*, 232 W. Va. 717, 724, 753 S.E.2d 875, 882 (2012) ("[W]e note that there are instances, such as the present one, where the language used by the Legislature may be plain but where it has failed to define a certain word or phrase. 'In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.' Syl. pt. 1, *Miners in Gen. Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941),

7

*overruled, in part, on other grounds by Lee-Norse Co. v. Rutledge*, 170 W. Va. 162, 291

S.E.2d 477 (1982).").


The common, ordinary and accepted meaning of the word "financial" is

"relating to money." Merriam-Webster, http://www.m-w.com (last visited May 7, 2014).

Further, the word "[t]ransaction" is defined as "[s]omething performed or carried out" or

"[a]ny activity involving two or more persons." *Black's Law Dictionary* 1535 (8th ed. 1999).

Additionally, West Virginia Code § 62-1C-2 (2010) defines bail as

> security for the appearance of a defendant to answer to a specific
> criminal charge before any court or magistrate at a specific time
> or at any time to which the case may be continued.  It may take
> any of the following forms:
> (a) The deposit by the defendant or by some other person
> for him *of cash*.
> (b) The written undertaking by one or more persons *to
> forfeit a sum of money equal to the amount of the bail* if the
> defendant is in default for appearance, which shall be known as
> a recognizance. . . .

(Emphasis added). Moreover, a review of the "Criminal Bail Agreement: Cash or

Recognizance"  in this case reflects that the magistrate court set the Petitioner's bail in the

amount of $1700 cash or surety.


In light of the foregoing,  a magistrate setting bail based upon the information

provided by a defendant in a criminal bail agreement document is something performed or

carried out relating to money and is also an activity involving two or more persons relating

8

to money. Therefore, we hold that a criminal bail agreement constitutes a financial transaction under the provisions of the identity theft statute set forth in West Virginia Code § 61-3-54 (2010). *See State v. Peters*, 665 N.W.2d 171, 175-76 (Wis. 2003) (in case involving defendant falsely presenting herself during her initial appearance in order to obtain a lower bail, the Wisconsin court recognized that under the Wisconsin identity theft statute, which is different from West Virginia's statute, bail had "monetary value . . . expressed in terms of cash or a bond, and operates as a form of credit[]" to secure a defendant's return to court).

The facts before us establish that the Petitioner used his brother's name, without his brother's consent, for the purpose of obtaining bail from the magistrate. This use was for a financial transaction because, based upon the information that the Petitioner provided, the Petitioner was allowed to pay the amount of $1700 set by the magistrate in order to secure the Petitioner's appearance to answer the criminal charges that had been brought against him. Contrary to the Petitioner's argument that no money was ever exchanged, there is no such requirement found in West Virginia Code § 61-3-54. All that the statute requires is that the Petitioner knowingly took his brother's name and personal information, without his brother's consent, *with the intent* to fraudulently represent that he was his brother for the purposes of getting bail, a financial transaction, in his brother's name. *See id.* There is no question that the Petitioner's conduct at issue fulfilled the elements set forth in the statute. *See id.*

9

## IV. Conclusion

Based upon the foregoing, the circuit court did not err in denying the Petitioner's motion to dismiss the indictment based upon its determination that the bail agreement was a financial transaction under the provisions of West Virginia Code § 61-3-54. Accordingly, we affirm the circuit court's decision.

Affirmed.