IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**THE CITY OF SOUTH CHARLESTON and
CITY OF SOUTH CHARLESTON PROPERTY BOARD,
Defendants Below, Petitioners**

**FILED
February 24, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-51**          (Cir. Ct. of Kanawha Cnty. Case No. CC-20-2023-C-683)

**M. ALEX URBAN,
Plaintiff Below, Respondent**

**and**

**WEST VIRGINIA DEPARTMENT OF AGRICULTURE,
Intervenor Below, Respondent**

MEMORANDUM DECISION

Petitioners the City of South Charleston and City of South Charleston Property Board (collectively the "City") appeal the Circuit Court of Kanawha County's January 23, 2025, order, which denied the City's motion for summary judgment and granted the separate motions for summary judgment filed by Respondent M. Alex Urban and Respondent West Virginia Department of Agriculture ("Department"). Mr. Urban and the Department each filed a response.[1] The City filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the court's decision is reversed, and this case is remanded for further proceedings consistent with this decision.

---

[1] The City is represented by W. Michael Moore, Esq., and Marey Casey, Esq. Mr. Urban is represented by Guy R. Bucci, Esq., and Ashley N. Lynch, Esq. The Department is represented by Attorney General John B. McCuskey, Esq., and Deputy Attorney General Anthony D. Eates II, Esq.

1

This matter began in October of 2022 when Mr. Urban applied with the City for a permit to harbor two honeybee hives at his residence located within City limits. The application was made in accordance with the former version of City Code, which provided:

> No person shall keep or harbor any cow, calf, horse, colt, mule, pony, goat, sheep, hog, swine or any other wild or domestic animal within the City unless the owner thereof shall have first obtained from the Property Board a permit to keep or harbor such animal; provided, however, that nothing herein contained shall be construed to mean or include dogs or cats.
>
> The Property Board may issue such permit if it, in its opinion, determines that such animal shall not constitute a nuisance, health problem or unsanitary condition.

South Charleston, W. Va., Code § 505.06(a) (2014) ("2014 Code"); *see* W. Va. Code § 8-12-5(25) (2023) (stating that municipalities have plenary power and authority "[t]o regulate or prohibit the keeping of animals or fowls and to provide for the impounding, sale or destruction of animals or fowls kept contrary to law or found running at large[.]").[2]

The City's Property Board ("Board") held a hearing on Mr. Urban's application on November 1, 2022. Thereafter, the Board made the decision to deny Mr. Urban's application, which was memorialized in a written decision dated January 3, 2023. In support, the Board's decision noted the following: that there are inherent safety concerns with the practice of beekeeping; it requires specialized equipment, techniques, and training; Mr. Urban could not give specific details regarding his purported twelve years of beekeeping experience; Mr. Urban's residence abuts five residences of similar size with an additional three residences directly across the street from his residence; honeybees become aggressive if the hive is threatened; and that beekeeping activities could constitute or create a nuisance, health problem, or unsanitary condition, in that bees can swarm, sting, and cause allergic reactions and other serious, adverse health consequences.

Mr. Urban filed his original complaint in circuit court on August 9, 2023, challenging the City's decision and the 2014 Code. However, on August 17, 2023, the City lawfully amended the 2014 Code.[3] As amended, the new code provisions replaced the Property Board's permitting process with language containing the following prohibition:

---

[2] For consistency, we cite to the current version of this statute in this decision. However, we note that this statutory language, although renumbered, remains unchanged from earlier versions of the statute. *See* W. Va. Code § 8-12-5(26) (2008) and W. Va. Code 8-12-5(26) (2014).

[3] *See generally* W. Va. Code § 8-11-4 (2022) (setting forth the procedure to amend municipal ordinances).

2

"No person may keep or harbor any cow, calf, horse, colt, mule, pony, goat, sheep, hog, swine, bee, chicken, duck, goose, turkey, pigeon, or any other wild or domestic animal within the City." South Charleston, W. Va., Code § 505.06(a) (2023) ("2023 Code").[4]

The City filed a motion to dismiss Mr. Urban's complaint on August 30, 2023, arguing that because the City adopted the 2023 Code, Mr. Urban could not obtain relief for his challenges based upon the 2014 Code. The Department filed a motion to intervene on October 10, 2023, and a response in opposition to the City's motion to dismiss on November 8, 2023. That same day, the City filed a response challenging the Department's intervention.

The circuit court held a hearing on the motion to dismiss and motion to intervene on November 15, 2023, and addressed each motion through separate orders. Namely, by order entered on December 4, 2023, the court denied the motion to dismiss, finding that the complaint survived an analysis under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Also in this order, the court granted Mr. Urban's oral motion to amend his complaint and entered a briefing schedule for the filing of summary judgment motions, supporting memoranda, and proposed orders. On December 12, 2023, the court granted the Department's motion to intervene, determining that intervention was warranted under Rules 24(a) and 24(b)(2) of the West Virginia Rules of Civil Procedure.[5]

On November 30, 2023, Mr. Urban filed his amended complaint.[6] His amended complaint sought declaratory judgment on three points: first, he sought a declaration that a bee was not an *animal* under the 2014 Code or West Virginia Code § 8-12-5(25); second, he requested a finding that the 2014 Code and 2023 Code are void and unenforceable because they have been preempted by the authority granted to the Department's Commissioner ("Commissioner") under the West Virginia Apiary Act (West Virginia Code §§ 19-13-1 to -20), the West Virginia Right to Farm Act (West Virginia Code §§ 19-19-1 to -8), and corresponding regulations; and third, he sought a declaration that the 2014 Code violated due process for lack of ascertainable standards.

---

[4] The 2023 Code also contains a list of exceptions to this prohibition, none of which are applicable to this case. *See* South Charleston, W. Va., Code § 505.06(b) (2023).

[5] Rule 24(a) provides for intervention as a matter of right, and Rule 24(b)(2) provides for the permissive intervention of a government agency or official.

[6] We acknowledge that Mr. Urban's original complaint sought relief through declaratory judgment or, in the alternative, a writ of mandamus. However, because Mr. Urban's amended complaint abandoned his request for mandamus relief and was the pleading from which the circuit court granted summary judgment, this Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4.

The City filed a motion to dismiss the amended complaint on December 18, 2023. The City argued that both the 2014 Code and 2023 Code were lawfully enacted pursuant to West Virginia Code § 8-12-5(25). The City further argued that the term *bee* falls within the plain meaning of the term *animal*; that preemption does not apply because neither the Apiary Act nor the Right to Farm Act contain any preemptive language; and the adoption of the 2023 Code moots Mr. Urban's challenges to the 2014 Code. The parties also complied with the court's scheduling order regarding summary judgment.

On January 23, 2025, the circuit court entered the order presently on appeal. In its decision, the circuit court found that summary judgment in favor of Mr. Urban was proper for two reasons.

First, the court found that the language of the 2014 and 2023 codes was not the prevailing issue, but rather, the issue was whether a bee was an *animal* under the language of West Virginia Code 8-12-5(25), which was necessary for the City to have the authority to regulate bees and beekeeping. Here, the circuit court concluded that a bee was not an animal and, thus, the City lacked authority to regulate bees in the first instance. *See* Syl. Pts. 1-2, *Chesapeake & Potomac Tel. Co. of W. Va. v. City of Morgantown*, 144 W. Va. 149, 107 S.E.2d 489 (1959) (recognizing that a municipality only has the authority granted to it by the constitution and legislation). Instead, the circuit court concluded that because the term *animal* is not defined under West Virginia Code § 8-12-5, the court must define the term based on its plain language. To that end, the court determined the plain meaning of *animal* exclusively by reviewing how *animal* and related terminology have been defined by separate provisions of West Virginia Code. Specifically, the court relied upon West Virginia Code § 19-9-1(b) (1982) (defining *animal* for legislation governing Diseases Among Domestic Animals and Euthanasia of Diseased Animals); § 19-18-1(e) (2022) (defining *livestock* under the General Stock Law); §§ 19-34-2(2) and -2(3) (2014) (defining both *dangerous wild animal* and *domestic animal* for the Dangerous Wild Animals Act); and § 19-16A-3(3) (1990) (defining *animal* for the West Virginia Pesticide Control Act). In sum, because none of those definitions expressly mentioned bees, the court reasoned that the City could not prove that a bee is an animal. As an additional step in its analysis, the circuit court also cited the definition of *agriculture* under the Right to Farm Act (West Virginia Code § 19-19-2(a) (2019)) and opined that because the definition includes the words *animal* and *apiary*, a bee is clearly not an animal.

Second, the circuit court determined that even if bees are animals, the City's prohibition on bees and beekeeping within City limits conflicts with the Apiary Act and Right to Farm Act, and therefore the City Code is invalid because under the statutory language of the acts, the regulation of beekeeping is solely vested with the Commissioner. Particularly, the court noted that under the Apiary Act, the Commissioner "may propose rules":

(1) To effectively eradicate, suppress or control honey bee pests as far as may be practical; (2) to regulate the keeping and maintaining of bees, bee equipment, queen breeding equipment, apiaries and appliances; (3) to regulate treatments, retreatments, and fees for the services; and (4) any other rules necessary to effectuate the enforcement of this article.

W. Va. Code § 19-13-3(a) (2003). The court also noted that the Apiary Act authorizes the Commissioner to cooperate with our state's political subdivisions "to carry out the effective administration of this article." W. Va. Code § 19-13-3(c). Next, the court summarized the Apiary Act's corresponding regulations. *See generally* W. Va. Code R. §§ 61-2-1 to -5. Particularly, the circuit court noted that West Virginia Code of State Rules § 61-2-1 sets forth the "general operating rules and procedures for the inspection of apiaries, control of bee diseases, and limitation of liability for beekeepers," and that West Virginia Code of State Rules § 61-2-3.1 permits the Commissioner the authority to issue certificates of registration to beekeepers (West Virginia Code of State Rules § 61-2-3.1). The circuit court, albeit without any citation to the applicable regulation(s), also offered the broad observation that: "The rules also set forth regulations for safe beekeeping and authorize the Commissioner to enforce safety standards." Based on this statutory and regulatory language, the circuit court noted that while the Apiary Act does not create an entitlement to beekeeping, it does provide for the regulation of beekeeping and, thus, the City's prohibition exceeds its authority because it prevents the Commissioner from complying with their duties under the Apiary Act.

The circuit court also found that the City's regulation on beekeeping contradicted the public policy of the Right to Farm Act, which states, in part:

Whereas, the infringement upon agricultural lands and agricultural operations by other uses and occupancies which are either adverse or incompatible with the continued agricultural utilization may be of such nature as to endanger orderly agricultural production, it is hereby declared to be the public policy of this State that agricultural production and the utilization of land in agricultural productive operations be protected and preserved.

W. Va. Code § 19-19-1 (1982). The court observed further that under West Virginia Code § 19-19-2, the Right to Farm Act declares:

(a) "Agriculture" shall mean the production of food, fiber and woodland products, by means of cultivation, tillage of the soil and by the conduct of animal, livestock, dairy, apiary, equine or poultry husbandry, and the practice of forestry, silviculture, horticulture, harvesting of silviculture products, packing, shipping, milling, and marketing of agricultural

5

products conducted by the proprietor of the agricultural operation, or any other legal plant or animal production and all farm practices.

(b) "Agricultural land" shall mean any amount of land and the improvements thereupon, used or usable in the production of food, fiber or woodland products of an annual value of $1,000 or more, by the conduct of the business of agriculture, as defined in subsection (a) of this section.

(c) "Agricultural operation" shall mean any facility utilized for agriculture.

Given these considerations, the circuit court noted that honeybees not only produce honey, but as stated in the amended complaint, "honeybees are pollinators that are essential to agriculture because they play a vital role in insuring a bountiful harvest of fruits, vegetables, flowers, and nuts." Therefore, the court found that while Mr. Urban's property does not meet the definition of *agricultural land*, his beekeeping activity qualifies as an *agricultural operation*, and as a result, the Right to Farm Act protects Mr. Urban's activities from civil or criminal actions brought by a municipality. *See* W. Va. Code § 19-19-7(d) (2019) ("No state or local agency may bring a criminal or civil action against an agricultural operation for an activity that is in material compliance with all applicable state and federal laws, regulations, and permits."). For these reasons, the circuit court concluded that the 2023 Code was unenforceable and granted summary judgment in favor of Mr. Urban. This appeal followed.[7]

In West Virginia, it is well established that a de novo standard of review applies to appellate review of orders granting summary judgment. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). This Court applies the same standard for granting summary judgment that a circuit court must apply, and that standard states, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *United Bank, Inc. v. Blosser*, 218 W. Va. 378, 383, 624 S.E.2d 815, 820 (2005) (quoting Syl. Pt. 2, *Painter*, 192 W. Va. at 190, 451 S.E.2d at 756). "Summary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted).

---

[7] The court's order also stated that because the court resolved the matter through summary judgment, the City's December 18, 2023, motion to dismiss was denied as moot.

Furthermore, a de novo standard of review also applies to matters of statutory interpretation. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995); *accord* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W. Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). With these established principles in hand, we proceed to the matter on appeal.

On appeal, the City raises nine assignments of error that include challenges to the circuit court's rulings regarding the City's motion to dismiss, the Department's motion to intervene, and the parties' summary judgment motions. However, because the core, dispositive substantive issues in this matter center on the circuit court's determinations on questions of law at summary judgment, the Court does not need to address the remaining assignment of errors in this decision. Therefore, we will only address the parties' arguments concerning the court's summary judgment order, and to that extent, have consolidated and restated those issues for ruling. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal). As to summary judgment, the City generally contends that the circuit court's summary judgment ruling must be reversed because the court erroneously determined as a matter of law that: (1) The City cannot regulate beekeeping because a bee is not animal under West Virginia Code § 8-12-5(25); and (2) The Apiary Act and Right to Farm Act otherwise invalidate the aforementioned statute and 2023 Code.

We begin our review by addressing the circuit court's determination that the City lacked the authority to regulate beekeeping because a bee does not fall within the definition of the term *animal* as used in West Virginia Code § 8-12-5(25). The City argues that the circuit court failed to apply the plain and ordinary meaning of the term *animal*. Conversely, Mr. Urban and the Department separately contend that as West Virginia Code § 8-12-5(25) plainly excludes bees and beekeeping, the principles of statutory construction such as the rule of in pari materia apply, and the circuit court correctly relied upon other legislative acts to define the term animal. Upon review, we agree with the City and conclude that the circuit court erred in its statutory construction of West Virginia Code § 8-12-5(25).

The question of law before the Court is whether a *bee* qualifies as an *animal* under West Virginia Code § 8-12-5(25). To answer this question, we must first address whether West Virginia Code § 8-12-5(25) is unambiguous. "When a statute is clear and unambiguous[,] and the legislative intent is plain, the statute should not be interpreted by

7

the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959); *see also* Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). In contrast:

> A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning. In other words, a statute is ambiguous when the statute's language connotes doubtfulness, doubleness of meaning, or indistinctness or uncertainty of an expression.

*State v. McClain*, 247 W. Va. 423, 429, 880 S.E.2d 889, 895 (2022) (citation modified).

We begin by noting that while Mr. Urban and the Department each contend that the circuit court properly concluded that West Virginia Code § 8-12-5 was ambiguous and correctly resolved the ambiguity at summary judgment, this contention is not an accurate reflection of the circuit court's order. In this case, there is no express language within the four corners of the January 23, 2025, order wherein the circuit court finds that West Virginia Code § 8-12-5(25) is ambiguous, susceptible to multiple meanings, indistinct, or otherwise uncertain. *See Dunlap v. Friedman's Inc.*, 213 W. Va. 394, 398, 582 S.E.2d 841, 845 (2003) ("A finding of ambiguity must be made prior to any attempt to interpret a statute."). Therefore, it must be inferred that the court found the word *animal* to be unambiguous and that its subsequent analysis represents an attempt to apply the plain meaning of *animal* to discern whether the City's authority under West Virginia Code § 8-12-5(25) extended to *bees*. While this Court agrees with the circuit court that the term *animal* is not ambiguous, as set forth below, we find no merit in or need for the circuit court's subsequent analysis and ultimate determination as to the accepted meaning of *animal*.

As previously established, the circuit court found that to give West Virginia Code § 8-12-5(25) its full force and effect, the ordinary meaning of *animal* must be extrapolated from other provisions of West Virginia Code. To support its exclusive dependence upon other statutes, the circuit court relied upon the Supreme Court of Appeals of West Virginia's ("SCAWV") decision in *Saleh v. Damron*, 242 W. Va. 568, 836 S.E.2d 716 (2019). In *Saleh*, the Court was presented with a certified question from federal district court regarding whether an ectopic embryo or fetus qualified as a "person" under the West Virginia Wrongful Death Statute. *Id.* at 569, 836 S.E.2d at 717. The majority's opinion answered that question in the negative by looking to the statutory definitions of "embryo" and "fetus" as set forth by our Legislature in The Pain-Capable Unborn Child Protection Act and Unborn Victims of Violence Act, and indicating that "while not controlling, we

8

find these provisions indicative of how the Legislature would define the terms 'embryo' and 'fetus' in relation to the Wrongful Death Statute." *Id.* at 576, 836 S.E.2d at 724 (citation modified). It is that limited statement, which formed the circuit court's basis in this case for using other portions of state code to define the word *animal*.

However, we find fault with the circuit court's approach. It is soundly established that "undefined words and terms in a legislative enactment will be given their common, ordinary, and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984) (citation modified). Such meaning, however, has not been, as the circuit court's order suggests, appropriately derived from cross-statutory definition borrowing. Rather, undefined terms and words have been historically defined by using dictionary definitions. In fact, the SCAWV recently reemphasized this point, noting:

> This Court has routinely looked to dictionary definitions to afford undefined terms their common, ordinary, and accepted meaning. *See e.g., State v. McClain*, 247 W. Va. 423, 880 S.E.2d 889 (2022) (the terms "crash" and "involved" as used in our "hit-and-run statute," West Virginia Code § 17C-4-1); *King v. West Virginia's Choice, Inc.*, 234 W. Va. 440, 766 S.E.2d 387 (2014) (the phrase "subject to" as used in West Virginia Code § 21-5C-1(e) of the Minimum Wage and Maximum Hours Standards statute); *State v. Soustek*, 233 W. Va. 422, 758 S.E.2d 775 (2014) (the terms "financial" and "transaction" as used in the identify theft statute, West Virginia Code § 61-3-54); *State v. Sulick*, 232 W. Va. 717, 753 S.E.2d 875 (2012) (the phrase "threat of force" as used in the criminal civil rights statute, West Virginia Code § 61-6-21(b) (1987)); *CSX Hotels, Inc. v. City of White Sulphur Springs*, 217 W. Va. 238, 617 S.E.2d 785 (2005) (the term "survey" as used in the annexation procedure set forth in West Virginia Code § 8-6-2(a)); *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005) (the term "recognized" as used in the statutory definition of "legal parent," West Virginia Code § 48-1-232).

*Eldercare of Jackson Cnty., LLC v. Lambert*, 250 W. Va. 291, 303 n.18, 902 S.E.2d 840, 852 n.18 (2024) (defining the term "actual malice" for the purposes of the COVID-19 Jobs Protection Act, West Virginia Code §§ 55-19-1 through 9 (2021)).[8]

Likewise, the SCAWV has an established history of rejecting invitations to establish the common meaning of terms based upon their assigned definitions from statutes and other

---

[8] *See also Christopher P. v. Amanda C.*, 250 W. Va. 53, 60 n.20, 902 S.E.2d 185, 192 n.20 (2024) (defining the word "imminent" as it relates to Rule 5.04 of the West Virginia Trial Court Rules and recognizing: "We frequently look to dictionary definitions for the common, ordinary, and accepted meaning of undefined terms.").

alternative sources. *See, e.g.*, *Watts v. W. Va. Dep't of Health and Hum. Res./Div. of Hum. Servs.*, 195 W. Va. 430, 434-35, 465 S.E.2d 887, 891-92 (1995) (declining to interpret the undefined term "generic" as used within the job description for Social Service Worker II positions based upon language created years later to describe Social Service Worker III positions); *W. Va. Racing Comm'n v. Reynolds*, 236 W. Va. 398, 402-03, 780 S.E.2d 664, 668-69 (2015) (finding that the commission properly defined "connive" and "corrupt" based upon their ordinary meanings and were not required to rely on specific definitions applied by the board of stewards and hearing examiner); *Soustek*, 233 W. Va. at 425 n.12, 758 S.E.2d at 778 n.12 (rejecting petitioner's invitation to use federal code definitions and case law to define "financial" and "transaction"); *W. Va. Educ. Ass'n v. Preston Cnty. Bd. of Educ.*, 171 W. Va. 38, 297 S.E.2d 444 (1982) (declining to apply the broad definition of "teacher" from the education statutes to interpret the same term in a criminal anti-nepotism statute).

Further, despite the circuit court's reference to various statutory definitions from Chapter 19 of our code to reach its conclusion that a *bee* is not defined as an *animal* under West Virginia Code § 8-12-5(25), the court's reliance is hindered because those outside sources contain language specifically limiting the applicability of those definitions to the body of law to which they are ascribed. *See Coordinating Council for Indep. Living v. Palmer*, 209 W. Va. 274, 282-83, 546 S.E.2d 454, 462-63 (2001) (citation modified) (finding that the tax commissioner's attempts to reinforce the meaning of "community care services" under a tax statute through additional statutory definitions were misplaced because "the various definitional statutes cited by the commissioner are limited to the specific body of law of which they are a part."). As it relates to this case, West Virginia Code § 19-9-1 strictly limits the scope of its definitions to "as used in this article, or in any rule or regulation authorized thereunder, unless the context otherwise requires or a different meaning is specifically prescribed[.]" Notably, there is no authorizing rule or regulation within the subject article implicating application of its definitions to West Virginia Code 8-12-5. Similar limiting language is found with respect to other statutes used by the circuit court. *See* W. Va. Code § 19-16A-3 ("As used in this article"); § 19-19-2 ("For the purposes of this article"); § 19-34-2 ("As used in this article unless otherwise specified").

For these reasons, we conclude that the circuit court erred in its attempt to give plain meaning to the word *animal* under West Virginia Code § 8-12-5(25). Instead, we note that according to Black's Law Dictionary, an *animal* is "any living creature (besides plants) other than a human being." *Animal*, Black's Law Dictionary (12th ed. 2024). Merriam-Webster's Dictionary defines the term as "any of a kingdom (Animalia) of living things including many-celled organisms and often many of the single-celled ones (such as protozoans) that typically differ from plants[.]" Merriam Webster Online, https://www.merriam-webster.com/dictionary/animal (last visited February 19, 2026). As such, we find that these definitions represent the plain, ordinary, and common meaning of

the word *animal* for the purposes of West Virginia Code § 8-12-5(25).[9] Accordingly, because the circuit court's summary judgment analysis did not afford *animal* its plain meaning, the court's summary judgment ruling is hereby reversed.

However, our review does not end there. Our final consideration is whether the circuit court erred when it made the alternative determination that even if the City had the authority to regulate bees under West Virginia Code 8-12-5(25), that statutory provision was invalid because it conflicts with the Commissioner's duties established by the Apiary Act and Right to Farm Act. On appeal, the parties frame their arguments as one of express and implied preemption. However, preemption is imprecise as it addresses hierarchical conflicts in which a federal law displaces state law, or state law displaces municipal ordinances. The circuit court's reasoning is more accurately understood as repeal by implication. Rather, the dispositive issue presented is whether there is an intra-code conflict between the City's authority under West Virginia Code § 8-12-5(25) and the Commissioner's duties outlined by the Apiary and Right to Farm Acts. In other words, the issue is whether the Commissioner's duties under the subject acts apply to the exclusion of the City's authority under West Virginia Code § 8-12-5(25). As explained below, we conclude the circuit court erred when it determined that a conflict existed that nullified the City's authority to regulate beekeeping under the statute.

"Statutes generally conflict when they are explicitly contrary to, or inconsistent with, each other." *State v. Schober*, 251 W. Va. 34, 41, 909 S.E.2d 69, 76 (2024) (citation modified). "Courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears." *Rice v. Underwood*, 205 W. Va. 274, 285, 517 S.E.2d 751, 762 (1998) (citation modified). The SCAWV has also held: "To warrant the adjudication of the repeal of a statute by implication there must exist such a positive repugnancy between the statute claimed to be repealed and the subsequent enactment that they cannot, by any reasonable hypothesis, be consistently reconciled." Syl. Pt. 2, *State ex rel. Thompson v. Morton*, 140 W. Va. 207, 84 S.E.2d 791 (1954). Measured against this standard, the circuit court's determination does

---

[9] Mr. Urban suggests that we should not apply these common definitions of "animal" because they render the word "fowls" in West Virginia Code § 8-12-5(25) superfluous. This argument relies on the "rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979). However, where, as in this case, "the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction." *State v. Mills*, 243 W. Va. 328, 337, 844 S.E.2d 99, 108 (2020) (citation modified). While Mr. Urban contends that application of this rule "create[s] ambiguity" in West Virginia Code § 8-12-5(25), the SCAWV has explained that "[r]ules of interpretation are resorted to for the purpose of resolving an ambiguity, not for the purpose of creating it." *Crockett v. Andrews*, 153 W. Va. 714, 719, 172 S.E.2d 384, 387 (1970).

11

not withstand scrutiny. As previously established, the circuit court relied upon certain language related to the Apiary Act and Right to Farm Act to summarily conclude that a conflict existed to the exclusion of the City's statutory authority to regulate beekeeping. *See* W. Va. Code § 19-13-3(a); W. Va. Code R. § 61-2-1 to -5; W. Va. Code §§ 19-19-1 and -7. However, upon review, we find no conflict between the statutes relied upon by the circuit court and the operative language of West Virginia Code 8-12-5(25).

In this case, there is no express language under either the Apiary Act or Right to Farm Act that plainly and clearly shows a legislative intent for the acts to supersede or repeal the City's authority to regulate beekeeping under West Virginia Code § 8-12-5(25). Instead, the language relied upon by the circuit court merely speaks in general terms, regarding beekeeping and the Commissioner's duties with respect thereto. The duties are administrative and supervisory in nature. No such "positive repugnancy" exists between the statutes; at most, the statutes overlap in subject matter (beekeeping as agriculture). A close review of the Apiary Act and the Right to Farm Act reflects a statutory scheme that contemplates concurrent and cooperative regulation, not silent displacement. Critically absent is any language that unambiguously vests the Commissioner with the sole authority to regulate beekeeping or language that the Commissioner expressly supersedes or invalidates the authority of any other government body to regulate beekeeping. We also find it significant that neither act makes a specific reference to municipal authority under Chapter 8, Article 12 of our code.

Further, contrary to the assertions of the respondents, the rule of in pari materia cannot be applied to support the circuit court's decision in this case.[10] "As a threshold matter, courts may not regard separate and distinct statutes *in pari materia* unless the Legislature's intent is ambiguous with respect to the statute in question." *State ex rel. Perdue v. Nationwide Life Ins. Co.*, 236 W. Va. 1, 6, 777 S.E.2d 11, 16 (2015); *see* Syl. Pt. 1, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous."). However, as addressed above, West Virginia Code § 8-12-5(25) is unambiguous, so this rule is inapplicable.

Lastly, we note our agreement with the City's argument that the circuit court erred by finding that the language of the subject acts illustrated a legislative intent to prevent municipalities from relying upon the word *animal* to regulate bees under West Virginia Code § 8-12-5(25). We temper this observation with the knowledge that "courts presume

---

[10] We note that the circuit court's order does not expressly rely upon this rule to support its ruling. However, because respondents rely upon the rule as one of the bases to support the circuit court's entry of summary judgment in their favor, we have chosen to address it.

the legislature drafts and passes statutes with full knowledge of existing law." *W. Va. Health Care Cost Rev. Auth. v. Boone Mem'l Hosp.,* 196 W. Va. 326, 336, 472 S.E.2d 411, 421 (1996) (citation modified). As previously set forth, the legislature recently amended and reenacted West Virginia Code § 8-12-5 in 2023 and, thus, it must be presumed that they acted with full knowledge of the existence of the Apiary and Right to Farm Acts. Accordingly, we discern that had the legislature desired to limit or prohibit a municipality from regulating beekeeping, it would have done so, either expressly or by specifically defining the term *animal* to the exclusion of bees. We are also cognizant that a "judicial challenge is not a license for this Court to judge the wisdom, fairness, or logic of legislative choices." *State v. Butler*, 239 W. Va. 168, 176, 799 S.E.2d 718, 726 (2017) (citation modified). *See also Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) (citation modified) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). We are also aware of the repeated unsuccessful legislative efforts to amend the Apiary Act and Right to Farm Act to preempt and supersede the regulation of certain agricultural activities, including beekeeping, and place plenary power with the Commissioner.[11] *See Butler*, 239 W. Va. at 176, 799 S.E.2d at 726 (noting that courts have found that the repeated rejection of legislation to be an expression of legislative intent). These failed efforts are certainly symbolic of a legislative intent not to expand the Department's or Commissioner's authority or otherwise wane the plenary authority granted to municipalities under Chapter 8, Article 12. As such, the circuit court's entry of summary judgment is reversed.

Accordingly, we reverse the circuit court's January 23, 2025, order granting summary judgment in favor of Mr. Urban and the Department, and remand the matter to the circuit court for entry of its order granting summary judgment in favor of the City.

Reversed and Remanded.

**ISSUED:** February 24, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[11] In the City's brief, the following are cited as failed legislation: H.B. 2454 (2025); H.B. 2725 (2025); S.B. 916 (2025); and S.B. 943 (2025). *See also* H.B.5533 (2024).